**THIS IS NOT A SOLICITATION OF VOTES ON THE PLAN. VOTES MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED A DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | Case No. 2:20-bk-52015-SDR |
| NEOPHARMA, INC., | Chapter 11 |
| Debtor. | |
| In re | Case No. 2:20-bk-52016-SDR |
| NEOPHARMA TENNESSEE LLC., | |
| Debtor. | Jointly Administered |

---

**DISCLOSURE STATEMENT FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF NEOPHARMA, INC. AND NEOPHARMA TENNESSEE, LLC**

---

Dated: September 16, 2021.

**POLSINELLI PC**

David E. Gordon
Georgia Bar No. 111877
(Admitted *Pro Hac Vice*)
Caryn E. Wang
Georgia Bar No. 542093
(Admitted *Pro Hac Vice*)
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Telephone: (404) 253-6000
Facsimile: (404) 684-6060
dgordon@polsinelli.com
cewang@polsinelli.com

*Counsel to Gary M. Murphey*
*As Chapter 11 Trustee*

**BUCHALTER, P.C.**

Jeffrey K. Garfinkle
(Cal Bar. No. 153496; Wash. Bar
No. 55968)
(Admitted *Pro Hac Vice*)
Julian I. Gurule
(Cal. Bar. No. 252160)
(Admitted *Pro Hac Vice*)
18400 Von Karman Ave., Suite 800
Irvine, CA 92612
Telephone: (949) 760-1121
jgarfinkle@buchalter.com
jgurule@buchalter.com

*Co-counsel to Official Committee*
*of Unsecured Creditors*

**WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER, PLLC**

Gregory C. Logue
(Tenn. Bar. No. 012157)
900 S. Gay Street, Suite 900
Knoxville, TN 37902
Telephone: (865) 215-1000
glogue@wmbac.com

*Co-counsel to Official*
*Committee of Unsecured*
*Creditors*

## DISCLAIMERS

This Disclosure Statement provides information regarding the Plan of Liquidation of Neopharma, Inc. and Neopharma Tennessee, LLC that the Plan Proponents are seeking to have confirmed by the Bankruptcy Court. The information contained in this Disclosure Statement is included for purposes of soliciting acceptances to, and confirmation of, the Plan and may not be relied on for any other purpose. Approval of this Disclosure Statement does not constitute a determination or recommendation by the Bankruptcy Court as to the fairness or the merits of the Plan.

This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain documents relating to the Plan, and certain financial information. Although the Plan Proponents believe that these summaries are fair and accurate and provide adequate information with respect to the documents summarized, such summaries are qualified to the extent that they do not set forth the entire text of, or are inconsistent with, such documents.

Although the Plan Proponents have made every effort to be accurate, the financial information contained herein has not been the subject of an audit or other review by an accounting firm. In the event of any conflict, inconsistency, or discrepancy between the terms and provisions in the Plan, this Disclosure Statement, the exhibits annexed to this Disclosure Statement, or the financial information incorporated herein or therein by reference, the Plan shall govern for all purposes. All holders of claims should read this Disclosure Statement and the Plan in their entirety before voting on the Plan.

The statements and financial information contained herein have been made as of the date hereof unless otherwise specified. Holders of claims and equity interests reviewing this Disclosure Statement should not infer at the time of such review that there have been no changes in the facts set forth herein. Although the Plan Proponents have made an effort to disclose where changes in present circumstances could reasonably be expected to affect materially the recovery under the Plan, this Disclosure Statement is qualified to the extent certain events do occur.

**IRS Circular 230 Notice**: To ensure compliance with IRS Circular 230, holders of claims and equity interests are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of claims or equity interests for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by the Plan proponents of the transactions or matters addressed herein; and (c) holders of claims and equity interests should seek advice based on their particular circumstances from an independent tax advisor.

This Disclosure Statement has been prepared in accordance with Bankruptcy Code Section 1125 and not necessarily in accordance with Federal or State securities laws or other non-bankruptcy law. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission (the "**SEC**") or any Federal, State, local or foreign

79794562.1

regulatory agency, nor has the SEC or any other such agency passed upon the accuracy or adequacy of the statements contained in this Disclosure Statement. Persons or entities holding or trading in, or otherwise purchasing, selling, or transferring, securities of or claims against the Debtors should evaluate this Disclosure Statement and the Plan in light of the purpose for which they were prepared.

NOTHING STATED HEREIN SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS, THE PLAN PROPONENTS, OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION .................................................................................................... 1

    A.      Plan Voting Instructions and Procedures ............................................................ 3

        1.      Voting Rights ........................................................................................ 3

        2.      Solicitation Materials ............................................................................ 3

        3.      Voting Instructions................................................................................ 4

        4.      Confirmation Hearing and Deadline for Objections to
                Confirmation ......................................................................................... 7

II.     GENERAL INFORMATION ABOUT THE DEBTORS ................................................ 7

    A.      Background ........................................................................................................ 7

    B.      Prepetition Organizational and Capital Structure ............................................... 8

        1.      Organizational Structure ....................................................................... 8

        2.      Secured Debt ......................................................................................... 8

        3.      Unsecured Debt ..................................................................................... 9

    C.      Events Leading to the Filing of the Bankruptcy Case ......................................... 9

III.    THE DEBTORS' BANKRUPTCY CASES................................................................. 10

    A.      Commencement of the Chapter 11 Cases .......................................................... 10

    B.      Equity Dispute .................................................................................................. 10

    C.      Appointment of the Committee ......................................................................... 11

    D.      Events Leading to the Appointment of the Chapter 11 Trustee.......................... 11

    E.      Post-Petition Financing..................................................................................... 12

    F.      Schedules, Statements of Financial Affairs and Claims Bar Dates .................... 13

    G.      Retention of Estate Professionals...................................................................... 13

    H.      Post-Petition Sales Process and Auction............................................................ 13

    I.      Other Motions and Orders ................................................................................. 15

    J.      Claim Objections .............................................................................................. 16

        1.      Objection to Claim No. 14.................................................................... 16

        2.      Objection to Claim Nos. 15 and 18....................................................... 16

        3.      Objection to Claim No. 34 .................................................................... 17

IV.     SUMMARY OF THE CHAPTER 11 PLAN .............................................................. 17

    A.      Treatment of Unclassified Claims ..................................................................... 18

|  |  | 1. | Administrative Claims | 18 |
|  |  | 2. | Bar Dates For Administrative Claims | 19 |
|  |  | 3. | Allowed Priority Tax Claims | 19 |
|  | B. | Classification and Treatment of Claims and Equity Interests | | 20 |
|  |  | 1. | Class 1:  Other Priority Claims | 20 |
|  |  | 2. | Class 2: Allowed Secured Claims | 20 |
|  |  | 3. | Class 3:  Allowed Non-Priority Wage Claims | 21 |
|  |  | 4. | Class 4: Allowed General Unsecured Claims | 21 |
|  |  | 5. | Class 5:  Subordinated Insider Claims | 21 |
|  |  | 6. | Class 6: Equity Interests in Debtor Neopharma | 22 |
|  |  | 7. | Class 7: Equity Interests in Debtor Neopharma Tennessee | 22 |
|  | C. | Acceptance or Rejection of the Plan | | 22 |
|  |  | 1. | Impaired Classes Entitled to Vote | 22 |
|  |  | 2. | Acceptance by Class 4 | 22 |
|  |  | 3. | Presumed Acceptances by Classes 1, 2, and 3 | 22 |
|  |  | 4. | Deemed Rejection by Classes 5, 6, and 7 | 22 |
|  | D. | Treatment of Executory Contracts and Unexpired Leases | | 23 |
|  |  | 1. | Rejection of Executory Contracts and Unexpired Leases | 23 |
|  |  | 2. | Rejection Claim Bar Date | 23 |
|  |  | 3. | Indemnification Obligations | 23 |
|  | E. | Injunctions, Releases, and Discharge | | 23 |
|  |  | 1. | Injunction | 23 |
|  |  | 2. | Exculpation | 24 |
|  | F. | Conditions to Effectiveness | | 24 |
| V. | RISK FACTORS | | | 25 |
|  | A. | Risks Related to Bankruptcy | | 25 |
|  |  | 1. | Parties May Object to the Plan's Classification of Claims and Equity Interests | 25 |
|  |  | 2. | The Plan Proponents May Not Be Able to Obtain Confirmation of the Plan | 25 |
|  |  | 3. | The Conditions Precedent to the Effective Date of the Plan May Not Occur | 25 |
|  |  | 4. | Allowed Claims May Exceed Estimates | 25 |

B.      Risks Related to Financial Information ............................................................... 26

VI.    CONFIRMATION OF THE PLAN................................................................................. 26

A.      Requirements for Confirmation of the Plan....................................................... 26

B.      Best Interests of Creditors................................................................................. 27

C.      Feasibility.......................................................................................................... 28

D.      Acceptance by Impaired Classes ...................................................................... 28

E.      Confirmation Without Acceptance by All Impaired Classes.............................. 28

1.      No Unfair Discrimination ........................................................................ 29

2.      Fair and Equitable Test ........................................................................... 29

VII.   TAX CONSEQUENCES OF THE PLAN .................................................................... 29

VIII.  LIQUIDATING TRUST MATTERS ............................................................................. 30

A.      Securities Related Matters ................................................................................ 30

B.      Tax Treatment.................................................................................................... 30

IX.    RECOMMENDATION ................................................................................................. 31

## EXHIBITS

EXHIBIT A    Plan of Liquidation

> **THE PLAN PROPONENTS HEREBY ADOPT AND INCORPORATE EACH
> EXHIBIT ATTACHED TO THIS DISCLOSURE STATEMENT
> BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN**

## I.   <u>INTRODUCTION</u>

Gary Murphey, in his capacity as the duly-appointed Chapter 11 Trustee (the "**Chapter 11 Trustee**") of Neopharma, Inc. ("**Neopharma**") and Neopharma Tennessee, LLC ("**Neopharma Tennessee**", together with Neopharma, the "**Debtors**" or the "**Company**"), and the official committee of unsecured creditors of the Debtors (the "**Committee**", together with the Chapter 11 Trustee, the "**Plan Proponents**") hereby submit this disclosure statement (the "**Disclosure Statement**") pursuant to sections 1125 and 1126(b) of Title 11 of the United States Code (the "**Bankruptcy Code**"), in connection with the solicitation of votes on the Chapter 11 Plan of Liquidation of Neopharma, Inc. and Neopharma Tennessee, LLC, dated September 16, 2021 (as amended, supplemented or otherwise modified from time to time pursuant to its terms, the "**Plan**").[1] A copy of the Plan is attached hereto as <u>Exhibit A</u>.

The Debtors filed for chapter 11 bankruptcy protection on December 22, 2021. The purpose of the Chapter 11 Cases is to resolve the affairs of the Debtors and distribute the proceeds of the Debtors' estates pursuant to a confirmed chapter 11 plan. To that end, the Plan Proponents filed the Plan, the terms of which are more fully described herein, contemporaneously with the filing of this Disclosure Statement. The Plan contemplates a liquidation of the Debtors and their Estates and is therefore referred to as a "plan of liquidation." The primary objective of the Plan is to maximize the value of recoveries to all Holders of Allowed Claims and to distribute all property of the Estates that is or becomes available for distribution in accordance with the priorities established by the Bankruptcy Code. The Plan Proponents believe that the Plan accomplishes this objective. The Plan Proponents also believe that Confirmation of the Plan will avoid the lengthy delay and significant cost of conversion to and completion of liquidation under chapter 7 of the Bankruptcy Code.

The Plan classifies Holders of Claims and Equity Interests according to the type of the Holder's Claim or Equity Interest, as more fully described below. Only those Holders of Claims in Class 4 (General Unsecured Claims) are entitled to vote to accept or reject the Plan.

The table below summarizes the classification and treatment of the Claims and Equity Interests under the Plan.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE. FOR A COMPLETE DESCRIPTION OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN.**

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

79794562.1

| Class | Claim or Equity Interest | Summary of Treatment | Voting Rights | Estimated Aggregate Amount of Allowed Claims[2] | Projected Recovery Under Plan |
|---|---|---|---|---|---|
| 1 | Priority Claims | Unimpaired | Not Entitled to Vote (Conclusively Presumed to Accept) | $571,305.00 | 100% |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Conclusively Presumed to Accept) | $0 – 265,479.00 | 100% |
| 3 | Non-Priority Wage Claims | Unimpaired | Not Entitled to Vote (Conclusively Presumed to Accept) | $580,506.00 | 100% |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote | $4,823,000.00 – $7,862,000.00[3] | 55% – 83% |
| 5 | Subordinated Insider Claims | Impaired | Not Entitled to Vote (Deemed to Reject) | $0 – $2,299,902.00 | 0% |
| 6 | Interests in Neopharma, Inc. | Impaired | Not Entitled to Vote (Deemed to Reject) | N/A | 0% |
| 7 | Interests in Neopharma Tennessee, LLC | Impaired | Not Entitled to Vote (Deemed to Reject) | N/A | 0% |

**THE PLAN PROPONENTS BELIEVE THAT THE PLAN IS FAIR AND EQUITABLE, WILL MAXIMIZE THE VALUE TO THE ESTATES, IS IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND THEIR STAKEHOLDERS, AND WILL ACCOMPLISH THE OBJECTIVES OF CHAPTER 11.**

**FOR THESE REASONS, THE PLAN PROPONENTS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR HOLDERS OF CLAIMS AND EQUITY INTERESTS AND THUS STRONGLY RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.**

---

[2] Estimated aggregate amount of claims in each class as well as projected recoveries for each class are based solely on the Plan Proponents' understanding of the universe of the claims in each Class. The actual amount of claims and projected recoveries could vary significantly based upon the reconciliation of the final pool of filed claims. Nothing herein shall be construed to be an admission by the Plan Proponents as to the extent, priority or validity of any claim.
[3] The range of projected recoveries for Class 4 reflects the unresolved treatment of (a) the Disputed Peta Pharma claim for $265,479 and (b) the Disputed Insider Claim of Neopharma UAE for $2,299,902.

## A.    Plan Voting Instructions and Procedures

### 1.    Voting Rights

Under the Bankruptcy Code, only Classes of Claims that are "Impaired" and that are not deemed as a matter of law to have rejected a plan of liquidation under Bankruptcy Code section 1126 are entitled to vote to accept or reject the Plan. Any Class that is "Unimpaired" is not entitled to vote to accept or reject a plan of liquidation and is conclusively presumed to have accepted the Plan. As set forth in Bankruptcy Code section 1124, a Class is "Impaired" if the legal, equitable, or contractual rights attaching to the claims or equity interests of that Class are modified or altered.

Pursuant to the Plan, Claims in Class 1, Class 2, and Class 3 are Unimpaired by the Plan, and such holders are deemed to have accepted the Plan and are therefore not entitled to vote on the Plan.

Pursuant to the Plan, Claims in Class 4 (General Unsecured Claims) are Impaired and may be entitled to receive a Distribution under the Plan, and only the holders of Claims in this Class are entitled to vote to accept or reject the Plan. Whether a holder of a Claim in Class 4 may vote to accept or reject the Plan will also depend on whether such Claim is Disputed or whether the holder held such Claim as of the Voting Record Date.

Pursuant to the Plan, Claims in Class 5 (Subordinated Insider Claims) are Impaired. The Plan Proponents estimate that Holders of Subordinated Insider Claims will receive no distribution under the Plan. However, in the event all Allowed Claims in Class 4 are paid in full and there are Remaining Funds, each Holder of an Allowed Subordinated Insider Claim shall receive such Holder's Pro Rata share of Cash from the Remaining Funds. Holders of Claims in Class 5 are deemed to have rejected the Plan and are therefore not entitled to vote on the Plan.

Pursuant to the Plan, Holders of Claims or Equity Interests in Class 5, Class 6, and Class 7 will not receive any Distribution and are deemed to have rejected the Plan and are therefore not entitled to vote on the Plan.

### 2.    Solicitation Materials

The Plan Proponents seek approval to use Stretto Services (the "**Voting Agent**") to serve as the voting agent to process and tabulate Ballots for each Class entitled to vote on the Plan and to generally oversee the voting process. The following materials shall constitute the solicitation package (the "**Solicitation Package**"):

- This Disclosure Statement, including the Plan and all other Exhibits annexed thereto;

- The Bankruptcy Court order approving this Disclosure Statement (the "**Disclosure Statement Order**");

- The notice of, among other things, (i) the date, time, and place of the hearing to consider Confirmation of the Plan and related matters, and (ii) the deadline for

filing objections to Confirmation of the Plan (the "**Confirmation Hearing Notice**");

- One or more Ballots, as applicable, to be used in voting to accept or to reject the Plan and applicable instructions with respect thereto (the "**Voting Instructions**");

- A pre-addressed return envelope; and

- Such other materials as the Bankruptcy Court may direct or approve.

The Plan Proponents, through the Voting Agent, will distribute the Solicitation Package in accordance with the Disclosure Statement Order.

If you are the holder of a Claim and believe that you are entitled to vote on the Plan, but you did not receive a Ballot or your Ballot is damaged or illegible, or if you have any questions concerning voting procedures, you should contact the Voting Agent by writing to Neopharma Ballot Processing, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602, by telephone at 855-425-1761 (domestic toll-free hotline) or 949-617-1898 (international hotline), or via email at TeamNeopharma@stretto.com.

If the reason that you did not receive a Ballot is because your Claim is subject to a pending objection or otherwise has been designated as a Disputed Claim and you wish to vote on the Plan, you must file a motion pursuant to Bankruptcy Rule 3018 with the Bankruptcy Court for the temporary allowance of your Claim for voting purposes by November [1], 2021, or you will not be entitled to vote to accept or reject the Plan.

**THE PLAN PROPONENTS AND THE LIQUIDATING TRUSTEE, AS AND IF APPLICABLE, RESERVE THE RIGHT THROUGH THE CLAIM OBJECTION PROCESS, TO OBJECT TO OR SEEK TO DISALLOW ANY CLAIM OR EQUITY INTEREST FOR DISTRIBUTION PURPOSES.**

### 3.      Voting Instructions

All votes to accept or reject the Plan must be cast by using the Ballots enclosed with the Solicitation Packages. No votes other than ones using such Ballots will be counted, except to the extent the Bankruptcy Court orders otherwise. The Bankruptcy Court has fixed the Voting Record Date for the determination of the holders of Claims and Equity Interests who are entitled to (a) receive a copy of this Disclosure Statement and all of the related materials and (b) vote to accept or reject the Plan. The Voting Record Date and all of the solicitation and voting procedures shall apply to all of the Debtors' Creditors and other parties in interest.

After carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot, you are asked to indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the accompanying Ballot.

**The deadline to vote on the Plan is November [19], 2021 at 4:00 p.m. (Eastern Standard Time)** (the "**Voting Deadline**"). For your vote to be counted, your Ballot must be

properly completed in accordance with the Voting Instructions on the Ballot, and **received** no later than the Voting Deadline at the address set forth below:

> Neopharma Ballot Processing
> c/o Stretto
> 410 Exchange, Suite 100
> Irvine, CA 92602

> Ballots may also be submitted electronically at:

> **https://balloting.stretto.com**.

Instructions for electronic, online transmission of Ballots are set forth on the Ballots.

Only the Holders of Claims in Class 4 as of the Voting Record Date are entitled to vote to accept or reject the Plan, and they may do so by completing the appropriate Ballots and returning them in the envelope provided by the Voting Agent so as to be actually received by the Voting Agent by the Voting Deadline or by voting on the Voting Agent's website by the Voting Deadline. Each holder of a Claim must vote its entire Claim within a particular Class either to accept or reject the Plan and may not split such votes. If multiple Ballots are received from the same holder with respect to the same Claim prior to the Voting Deadline, the last timely received, properly executed Ballot will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot. The Ballots will clearly indicate the appropriate return address. It is important to follow the specific instructions provided on each Ballot and/or on the Voting Agent's website.

Unless otherwise provided in the Voting Instructions accompanying the Ballots and/or on the Voting Agent's website or otherwise ordered by the Bankruptcy Court, the following Ballots will not be counted in determining whether the Plan has been accepted or rejected:

- Any Ballot that fails to clearly indicate an acceptance or rejection, or that indicates both an acceptance and a rejection, of the Plan;

- Any Ballot received after the Voting Deadline, except if the Plan Proponents granted an extension of the Voting Deadline with respect to such Ballot, or by order of the Bankruptcy Court;

- Any Ballot containing a vote that the Bankruptcy Court determines was not solicited or procured in good faith or in accordance with the applicable provisions of the Bankruptcy Code;

- Any Ballot that is illegible or contains insufficient information to permit the identification of the Claim;

- Any Ballot cast by a Person or Entity that does not hold an Allowed Claim or Equity Interest in a voting Class; and

- Any unsigned Ballot or Ballot without an original signature (or in the case of electronic balloting, a proper and verified electronic signature).

Any party who has previously submitted to the Voting Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Voting Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the case where more than one timely, properly completed Ballot is received, only the Ballot that bears the latest date will be counted for purposes of determining whether the requisite acceptances have been received. Any party who has delivered a properly completed Ballot for the acceptance or rejection of the Plan that wishes to withdraw such acceptance or rejection rather than changing its vote may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must: (i) contain the description of the Claim(s) or Equity Interest(s) to which it relates and, in the case of Claims, the aggregate principal amount represented by such Claims; (ii) be signed by the withdrawing party in substantially the same manner as the Ballot being withdrawn; (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn; and (iv) be actually received by the Voting Agent prior to the Voting Deadline.

The Plan Proponents, in their sole discretion, subject to contrary order of the Court, may waive any defect in any Ballot at any time, either before or after the close of voting, and without notice. Except as otherwise provided herein, the Plan Proponents may, in their sole discretion, reject such defective Ballot as invalid and, therefore, not count it in connection with confirmation of the Plan.

**ALL BALLOTS ARE ACCOMPANIED BY VOTING INSTRUCTIONS. IT IS IMPORTANT THAT THE HOLDER OF A CLAIM OR EQUITY INTEREST IN THE CLASSES ENTITLED TO VOTE FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED WITH EACH BALLOT.**

If you have any questions about (a) the procedure for voting your Claim ,(b) the Solicitation Package that you have received, or (c) the amount of your Claim, or if you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy of the Plan, this Disclosure Statement, or any appendices or Exhibits to such documents, please contact the Voting Agent at the address specified above.

The Voting Agent will process and tabulate Ballots for the Classes entitled to vote to accept or reject the Plan and will file a voting report (the "**Voting Report**") as soon as reasonably practicable following the Voting Deadline. The Voting Report will, among other things, describe every Ballot that does not conform to the Voting Instructions or that contains any form of irregularity, including, but not limited to, those Ballots that are late, illegible (in whole or in material part), unidentifiable, lacking signatures, lacking necessary information, or damaged.

**THE PLAN PROPONENTS URGE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE TO TIMELY RETURN THEIR BALLOTS AND TO VOTE TO ACCEPT THE PLAN BY THE VOTING DEADLINE.**

79794562.1

4.       **Confirmation Hearing and Deadline for Objections to Confirmation**

Bankruptcy Code section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan. Bankruptcy Code section 1128(b) provides that any party in interest may object to Confirmation of the Plan.

**The Bankruptcy Court has scheduled the Confirmation Hearing to commence on December [7], 2021 at [_____] (Eastern Standard Time)**, before the Honorable Shelley D. Rucker, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Eastern District of Tennessee, James H. Quillen United States Courthouse, 220 West Depot Street, Suite 218, Greeneville, TN 37743. The Confirmation Hearing Notice, which sets forth the time and date of the Confirmation Hearing, has been included along with this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

**Objections to Confirmation of the Plan must be filed and served on the Plan Proponents and certain other entities, all in accordance with the Confirmation Hearing Notice by no later than November [19], 2021 at 4:00 p.m. (Eastern Standard Time).** Unless objections to Confirmation of the Plan are timely served and filed in compliance with the Disclosure Statement Order, which is attached to this Disclosure Statement, they may not be considered by the Bankruptcy Court.

## II.   GENERAL INFORMATION ABOUT THE DEBTORS

### A.   Background

The Debtors' owned and operated a pharmaceutical manufacturing, processing, testing, warehousing, packaging and distribution business located in Bristol, Tennessee. The Debtors operated their pharmaceutical business at a 367,538-square-foot, FDA-approved manufacturing plant located on 41.10 acres of land (the "**Facility**"). The Facility was constructed in 1978, with expansions in 1983, 1988, 1989, and 2003. The Facility was formerly occupied by GlaxoSmithKline ("**GSK**").

In 2011, GSK sold the Facility to Dr. Reddy's Laboratories, Inc. ("**Dr. Reddy's**") for a purchase price of $11,000,000.00. The acquisition included the business enterprise, machinery and equipment, as well as real estate.

In October of 2018, the Debtors acquired 100% of the membership interests of the Dr. Reddy's entity that operated the Facility for a purchase price of $4,000,000 and began operating the Facility. The Debtors manufactured, marketed, and sold Amoxil®, Augmentin®, Augmentin® ES 600, and Augmentin® XR. The Debtors ceased production in August, 2020. At the time they ceased production, the Debtors had approximately 50 employees.

7

### B.    Prepetition Organizational and Capital Structure

### 1.    Organizational Structure

There are two Debtor entities: Neopharma, Inc. and Neopharma Tennessee, LLC. From its creation until August 2018, Neopharma, Inc. was a subsidiary of Neopharma LLC, a UAE entity which held 100% equity control of Neopharma, Inc. In August 2018, Neopharma LLC sold 100% of its shares of Neopharma, Inc. to Neopharma International Holding, UAE ("**Neopharma UAE**").

In October of 2018, Neopharma, Inc. purchased 100% of the equity of Dr. Reddy's, and subsequently changed the name from Dr. Reddy's to Neopharma Tennessee, LLC.

On July 24, 2020, Canadian Pharma International, Ltd. ("**CPIL**") purportedly acquired all issued and outstanding stock of Debtor Neopharma from Neopharma UAE. Based on the information available to the Plan Proponents, the following people served as officers and/or directors of the Debtors at some point prior to CPIL acquiring the stock of Debtor Neopharma: Sesha Madireddi, Mallikarjuna Desireddy, and Venu Gopala Krishna Gopa.

On July 27, 2020, CPIL began removing all persons previously serving in any capacity as a director or officer of Neopharma. As of the Petition Date, David Argyle served as the Chief Restructuring Officer of the Debtors and was the sole member of the board of directors of Debtor Neopharma.

Pursuant to Neopharma's list of equity holders that was filed on the Petition Date in accordance with Bankruptcy Rule 1007(a)(3), Neopharma had outstanding 4,000 shares of common stock and CPIL was the holder of record of that common stock as of the Petition Date. After the Petition Date, CPIL transferred its interests in Neopharma to David Argyle. As set forth below, Mr. Argyle's ownership of Neopharma is subject to a dispute with Neopharma UAE; however, such dispute is immaterial in the view of the Plan Proponents because (i) Holders of Equity Interests are not entitled to vote under the Plan, (ii) there will be no distribution on account of Equity Interests under the Plan; and (iii) all Equity Interests will be cancelled, terminated, extinguished, and void on the Effective Date.

### 2.    Secured Debt

The Debtors in these Chapter 11 Cases did not have any secured debt prior to the Petition Date other than the disputed secured debt of Peta Pharma, Inc. ("**Peta Pharma**"). On February 5, 2021, Peta Pharma filed a proof of claim against Debtor Neopharma, Claim No. 7 in the Official Claims Register, in the amount of $265,479.48 (the "**Peta Pharma Claim**"). Pursuant to the filed proof of claim, Peta Pharma asserts that the Peta Pharma Claim is secured by certain assets of the Debtors that Peta Pharma values at $3,200,000.00.

No loan agreement or other documentation exists between the Debtors and Peta Pharma evidencing a loan or advance of $250,000.00. However, on July 8, 2020, Neopharma made that certain Promissory Note (the "**Note**") in favor of Peta Pharma for repayment of a purported loan in the original principal amount of $250,000.00 plus interest accruing at the rate of 7.5% per annum (the "**Loan**"). The Note was signed by Mr. Sesha Madireddi, as President of Peta Pharma, and Mr.

8

Desireddy, as CEO and CTO of Neopharma. Debtor Neopharma Tennessee is not a party to the Note.

On August 3, 2020, Mr. Desireddy, purportedly on behalf of Neopharma, entered into that certain Security Agreement with Peta Pharma (the "**Security Agreement**"). Pursuant to the Security Agreement, Mr. Desireddy attempted to grant Peta Pharma a first-priority security interest in all of Neopharma's property in connection with Neopharma's obligations under the Note. Neopharma Tennessee is not a party to the Security Agreement.

The Plan Proponents believe that Peta Pharma does not hold a valid, properly perfected security interest in any of the Debtors' property for the following reasons: (i) Mr. Desireddy did not possess the actual or apparent authority to enter Neopharma into the Security Agreement; (ii) Peta Pharma did not properly attach its alleged security interest in any property of the Debtors; and (iii) Peta Pharma did not properly perfect its alleged security interest in any property of the Debtors. To the extent Peta Pharma does not consent to reclassification of the Peta Pharma Claim as a General Unsecured Claim, the Plan Proponents intend to object to the Peta Pharma Claim to reclassify the Peta Pharma Claim as a General Unsecured Claim.

### 3.       Unsecured Debt

As of the Petition Date, the Debtors owed approximately $4.7 million, exclusive of the Disputed Insider Claims and the Peta Pharma Claim.

### C.       Events Leading to the Filing of the Bankruptcy Case

According to the Declaration of David Argyle [Docket No. 67-1] (the "**Argyle Declaration**"), after CPIL began operating the Facility, a number of irregularities were discovered in the handling and management of the Debtors, including: (i) ERISA violations; (ii) Payroll Protection Program ("**PPP**") application and disbursement improprieties; (iii) payments from the company's bank accounts to Optimus Pharma, LLC, a business with the same address as Mr. Desireddy's New Jersey residence; (iv) irregularities in IRS filings; (v) personal use of company credit cards and reimbursement to certain officers and directors; (vi) FDA compliance; (vii) irregular wire transfers; and (viii) transfers of company funds without supporting documentation.

This mismanagement by the directors and officers of Neopharma created a deficiency in Neopharma's liquidity. From January 2020 through June 2020, Neopharma incurred a loss of $5,571,500. There were also a reported $2,000,000 overdue amount on current liabilities, and a negative cash flow rate of $3,243,864. By August 2020, Neopharma's Key Bank account showed a negative cash balance of ($77.83).

Although CPIL, through David Argyle, stated that the Debtors' financial situation had somewhat stabilized after the purported transfer of ownership, on August 10, 2020, the Debtors ceased their manufacturing operations due to their inability to meet payroll obligations and other expenses of operation.

After the cessation of manufacturing operations, CPIL believed that a sale of the Debtors' assets through a Chapter 11 proceeding was in the best interests of the Debtors.

## III.   THE DEBTORS' BANKRUPTCY CASES

### A.   Commencement of the Chapter 11 Cases

On December 22, 2021 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Debtors initially managed the businesses as debtors-in-possession until the Chapter 11 Trustee was appointed on January 29, 2021.

On December 23, 2020, the Debtors filed, among other documents, a Verification of Creditor Matrix, List of Creditors, Motion for Joint Administration, and Motion to Extend Deficiency Deadline. On January 4, 2021, the Court entered a Preliminary Order granting the Motion for Joint Administration. [Docket No. 22]. On March 3, 2021, the Court entered a final order granting the Debtors' Motion for Joint Administration [Docket No. 211].

### B.   Equity Dispute

On January 9, 2021, Neopharma International Holdings, UAE ("**Neopharma UAE**") filed two motions to dismiss [Docket Nos. 34 and 35] (the "**Motions to Dismiss**") claiming that Neopharma UAE owns 100% of the stock of Debtor Neopharma. As set forth in paragraph 4 of the Motions to Dismiss, "Neopharma International Holdings, UAE owns 100% of the stock of Neopharma, Inc." Contrary to the assertions of Mr. Argyle, Dr. B.R. Shetty, the principal of Neopharma UAE, claims that there was no authorized transfer of any shares of Debtor Neopharma to CPIL. *See Declaration of B.R. Shetty* [Docket No. 34-3] (the "**Shetty Declaration**").

In response, the Debtors filed their *Preliminary Response in Opposition to Motion by Neopharma, Inc. to Dismiss Case and Motion by Neopharma, Inc. to Dismiss Neopharma Tennessee LLC* [Docket No 67], and the *Declaration of David Argyle* [Docket No. 67-1] (the "**Argyle Declaration**"). The Argyle Declaration lays out the purported sale timeline between Neopharma UAE and CPIL, as well as the mismanagement of the Debtors that occurred prior to CPIL's involvement.

In connection with the Motions to Dismiss, Dr. Shetty also submitted a notarized December 28, 2020 letter to Mr. Desireddy stating that all shares of Debtor Neopharma are owned by Neopharma UAE, and that Mr. Desireddy has "full and complete authorization" to handle the daily operations of the Debtors. Dr. Shetty also submitted a January 5, 2021 letter to CPIL disputing both CPIL's ownership, as well as the alleged financial distress of the Debtors. In the letter, Dr. Shetty states, without supporting documentation, that the total liabilities of Debtor Neopharma were $75,200.00.

In response, Mr. Argyle submitted a signed Stock Purchase Agreement. *See* Docket No. 67-1. Along with the Stock Purchase Agreement, Mr. Argyle submitted several emails seemingly originating from Dr. Shetty discussing the sale of the Debtors to CPIL. Mr. Argyle also offered multiple emails from various individuals associated with the Debtors and Neopharma UAE discussing the financial straits of the Debtors.

On January 29, 2021, Neopharma UAE agreed to withdraw the Motions to Dismiss pending the sale of the Debtors' assets [Docket Nos. 128 and 129].

CPIL was listed as Debtor Neopharma's sole equity holder in its *List of Debtor's Equity Security Holders* [Docket No. 144] filed on February 1, 2021. After the Petition Date, CPIL transferred its interests in Neopharma to David Argyle. Neopharma UAE has not filed a competing proof of equity interest. Although the equity dispute remains unresolved, as discussed above, the Plan Proponents believe that the equity dispute with respect to the Debtors, their estates, and the Chapter 11 Cases is irrelevant to confirmation of the Plan.

### C.      Appointment of the Committee

On January 14, 2021, the Committee was appointed in the Chapter 11 Cases [Docket No. 58]. The Committee consists of the following parties: (i) McKesson Corporation; (ii) Securitas Security Services; (iii) Professional Personnel Service, Inc.; and (iv) Jekson Vision Private Limited.

### D.      Events Leading to the Appointment of the Chapter 11 Trustee

On January 7, 2021, the Debtors filed their Sale Motion [Docket No. 26], seeking to sell substantially all of the Debtors' assets, free and clear of all liens, claims, and encumbrances, to American Antibiotics Initiative, Inc. ("**AAII**") for $2,000,000.

The Committee filed its *Omnibus Preliminary Objection of the Official Committee of Unsecured Creditors to Motion to Dismiss* [Docket No. 65], arguing that chapter 11 was appropriate for the Debtors given the allegations of mismanagement and malfeasance in the Argyle Declaration.

On January 26, 2021, counsel for Neopharma UAE filed a *Motion for Entry of Agreed Order for Withdrawal of Motions to Dismiss* [Docket No. 114].

On January 26, 2021, the Committee filed its *Motion of the Official Committee of Unsecured Creditors for Immediate Appointment of Chapter 11 Trustee* [Docket No. 115]. The Committee requested the appointment of a chapter 11 trustee for cause in order to protect the interests of the Debtors' estates. To support its argument, the Committee pointed to the following issues that had arisen since the start of the chapter 11 proceedings: (i) failure to insure real property; (ii) proposed below market sale to an insider; (iii) conflict of Debtors' counsel,[4] (iv) failure to appropriately market assets and acts to chill bidding; (v) failure to disclose the appraisal value to the Facility; and (vi) failure to secure critical DIP financing.

---

[4] For a more detailed description of the alleged conflict of Debtors' counsel, *see Objection of the Chapter 11 Trustee to Application for Interim Compensation to Hunter, Smith & Davis LP* [Docket No. 274].

On January 28, 2021, the *Stipulation Regarding Immediate Appointment of Chapter 11 Trustee* [Docket No. 127] was filed by the Debtors, the Committee, and the United States Trustee, agreeing to a court appointed chapter 11 trustee.

On January 29, 2021, the Court appointed Gary Murphey as the Chapter 11 Trustee [Docket No. 133].

### E.    Post-Petition Financing

On January 8, 2021, Debtors filed their *Motion for Interim and Final Orders Authorizing the Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. Section 364* [Docket No. 31] (the "**Financing Motion**"), seeking to obtain post-petition financing of up to $750,000 (the "**DIP Facility**") from AAII. The Bankruptcy Court entered the First Interim Post-Petition Financing Order [Docket No. 64], approving the Financing Motion on an interim basis and authorizing the Debtors to borrow $162,000 to pay for electrical utility services from Bristol Tennessee Essential Services. However, AAII never funded the DIP Facility due to unavailability of funds.

Upon his appointment, the Chapter 11 Trustee consulted with, *inter alia*, his proposed Professionals, the Committee, and the Committee's Professionals regarding the immediate needs of the Debtors and proposed certain modifications to the relief sought in the Financing Motion.

On February 2, 2021, the Bankruptcy Court entered the Second Interim Post-Petition Financing Order [Docket No. 157], pursuant to which the Bankruptcy Court, *inter alia*, (i) approved the Chapter 11 Trustee's modifications to the post-petition financing, (ii) approved the terms set forth in the Term Sheet between the Chapter 11 Trustee and B.H. Capital Ventures, LLC ("**Lender**"); (iii) approved the interim funding request of $250,000.00 to fund certain immediate needs of the Debtors; (iv) set an interim hearing on the Financing Motion for February 16, 2020 at 9:00 a.m. (the "**Third Interim Hearing**"); and (iv) set a final hearing on the Financing Motion for March 2, 2020 at 9:00 a.m. (the "**Final Financing Hearing**").

Prior to the Third Interim Hearing, the Chapter 11 Trustee determined that the Debtors required additional interim funding in the amount of $105,290.00 for aggregate interim funding in the amount of $355,290.00 to pay the necessary expenses of the Debtors that would come due prior to the Final Hearing. At the Third Interim Hearing, the Bankruptcy Court approved the Chapter 11 Trustee's request for additional interim funding and entered the Third Interim Post-Petition Financing Order [Docket No. 184].

On March 3, 2021, the Bankruptcy Court entered the Final Post-Petition Financing Order [Docket No. 210], pursuant to which the Bankruptcy Court approved, *inter alia*, post-petition financing of up to $1,000,000.00 in the aggregate to the Debtors on a final basis (the "**Post-petition Loan**").

In accordance with the Final Post-Petition Financing Order, the Chapter 11 Trustee caused the Debtors to borrow the aggregate principal amount of $1,000,000.00 from the Lender. On April 16, 2021, the Post-Petition Loan was repaid in full, including all associated fees and interests.

F.      **Schedules, Statements of Financial Affairs and Claims Bar Dates**

On December 28, 2020, Debtors filed an Official Form 309F1, [Docket No. 14], which established the General Bar Date of April 21, 2021 for non-governmental entities and the Governmental Unit Bar Date of June 21, 2021 for Governmental Units.

On January 22, 2021, the Debtors filed their Schedules and Statements of Financial Affairs (as subsequently amended, collectively the "**Schedules and Statements**"). [*See* Docket Nos. 92–100]. These documents contain basic information including, among other things, schedules of creditors holding unsecured priority and non-priority claims against the Debtors.

On January 25, 2021, the United States Trustee conducted the meeting of creditors pursuant to Section 341 of the Bankruptcy Code for the Chapter 11 Cases (the "**Meeting of Creditors**"). David Argyle testified on behalf of the Debtors at the Meeting of Creditors. The Meeting of Creditors was continued and concluded on July 1, 2021. The Chapter 11 Trustee testified on behalf of the Debtors at the continued Meeting of Creditors.

G.      **Retention of Estate Professionals**

On January 12, 2021, the Debtors filed their application to employ Hunter, Smith & Davis, LLP as Debtors' counsel [Docket No. 47]. The Court approved the application on February 2, 2021 and authorized the retention of Hunter, Smith & Davis, LLP as Debtors' counsel [Docket No. 154].

The Committee sought and obtained Court approval to employ (i) Buchalter, P.C. as co-counsel [Docket Nos. 112 and 182], (ii) Woolf, McClane, Bright, Allen & Carpenter, PLLC as Tennessee co-counsel [Docket Nos. 113 and 183], and (iii) Province, LLC as financial advisors to the Committee [Docket Nos. 143 and 213].

The Chapter 11 Trustee sought and obtained Court approval to employ (i) Polsinelli PC as counsel [Docket Nos. 169 and 205], (ii) Resurgence Financial Services, LLC as accountants [Docket Nos. 170 and 206], and Associated Accounting Services, P.C. as tax accountant [Docket Nos. 296 and 315].

H.      **Post-Petition Sales Process and Auction**

Upon their respective appointments, the Committee and the Chapter 11 Trustee engaged in a cooperative effort to market and sell all of the Debtors' Assets and maximize the recovery to the Debtors' estates.

1.      **The Bidding Procedures**

On January 27, 2021, the Committee filed the *Motion of Official Committee of Unsecured Creditors for an Order (I) Authorizing The Committee to Market the Debtors' Assets for Sale, (II) Approving Bidding Procedures, (III) Approving the Form of Asset Purchase Agreement, (IV) Approving a Stalking Horse Bid and Certain Bid Protections, (V) Authorizing The Committee Chairperson or The Committee's Designee to Execute Transaction Documents, and (VI) Granting*

79794562.1

*Related Relief* (the "**Bidding Procedures Motion**") [Docket No. 118], to which the Chapter 11 Trustee subsequently joined on February 12, 2021.

On February 18, 2021, the Court entered its *Order (I) Authorizing Creditor's Committee and Chapter 11 Trustee to Market Debtors' Assets for Sale, (II) Approving the Bidding Procedures, (III) Approving the Form of Asset Purchase Agreement, (IV) Approving Stalking Horse Bid and Certain Bid Protections, (V) Authorizing the Committee Chairperson or the Committee's Designee to Execute Transaction Documents, and (VI) Granting Related Relief* [Docket No. 185] (the "**Bidding Procedures Order**").

## 2.    Designation of the Stalking Horse

Per the Bidding Procedures Order, the deadline to designate a stalking horse purchaser was originally set for March 1, 2021, with a sale objection deadline set for March 16, 2021. On March 9, 2021, in accordance with the Bidding Procedures and Bidding Procedures Order, the Chapter 11 Trustee and the Committee, in consultation with the United States Trustee, extended the stalking horse designation deadline through and including March 15, 2021. [Docket No. 221].

On March 17, 2021, the Chapter 11 Trustee and the Committee, in consultation with the United States Trustee again extended the stalking horse designation deadline to and through March 17, 2021. [Docket No. 223]. Also on March 17, 2021, the Chapter 11 Trustee and the Committee designated USAntibiotics, LLC (f/k/a American Antibiotics, LLC) ("**USAntibiotics**", or "**Purchaser**"), a Georgia limited liability company, as the stalking horse purchaser. *Id.* USAntibiotics' stalking horse bid provided for a purchase price of four million dollars ($4,000,000.00) for substantially all of the Debtors' assets plus assumption of certain liabilities.

## 3.    The Auction

In accordance with the Bidding Procedures Order, the bid deadline was set for March 24, 2021 at 5:00 p.m. EST. By the bid deadline, the Chapter 11 Trustee and the Committee received three (3) Qualified Bids (as defined in the Bidding Procedures) for the Debtors' Assets, including the bid of USAntibiotics as the stalking horse purchaser. Chartwell Pharmaceuticals LLC, a Delaware limited liability company ("**Chartwell**"), and Polymathes Capital LLC, a Delaware limited liability company ("**Polymathes**", together with Chartwell and USAntibiotics, the "**Qualified Bidders**") each submitted a Qualified Bid.

On March 26, 2021, the Chapter 11 Trustee and the Committee conducted an auction (the "**Auction**") in accordance with the Bidding Procedures. At the commencement of the Auction, counsel for the Chapter 11 Trustee provided rules and procedures that would govern the Auction in accordance with the Bidding Procedures Order. The Chapter 11 Trustee's professionals, the Committee's professionals, counsel for the Debtors, the Qualified Bidders, the United States Trustee, and other parties in interest were present at the Auction.

After ten rounds of competitive bidding, USAntibiotics was selected as the successful bidder. USAntibiotics' winning bid included a purchase price of $8,700,000 ($8,500,000 cash plus a $200,000 break-up fee credit) plus assumption of certain liabilities. Polymathes was selected as the Backup Bidder, with a cash bid of $8,600,000. [*See* Docket No. 235].

### 4.    The Sale Hearing

Pursuant to the Bidding Procedures Order, the Bankruptcy Court conducted a hearing on the sale of the Debtors' assets (the "**Sale**") on March 31, 2021 at 10:00 a.m. (the "**Sale Hearing**"). At the Sale Hearing, the Bankruptcy Court heard testimony from various parties, including the Chapter 11 Trustee, Province, Polymathes, and CPIL. At the conclusion of the Sale Hearing, the Bankruptcy Court overruled all objections to the Sale and entered the Sale Order [Docket No. 264], approving the asset purchase agreement with USAntibiotics (the "**APA**") and the Sale of substantially all of the Debtors' assets.

The Sale closed on April 16, 2021. The following Executory Contracts and Unexpired Leases were assumed and assigned to USAntibiotics at closing: (i) Facility Lease Agreement with the Industrial Development Board of the City of Bristol, Tennessee; (ii) Tax Agreement with the Industrial Development Board of the City of Bristol, Tennessee; (iii) Trademark License Agreement with GlaxoSmithKline; and (iv) Patent License Agreement with GlaxoSmithKline.

Following the Sale, USAntibiotics hired certain of the Debtors' former employees. Pursuant to the APA, for any employee that was employed by USAntibiotics withing 90 days of the closing and that remains continuously employed by USAntibiotics for at least 180 consecutive days after being hired, USAntibiotics will assume the salary/wages of such employee accrued prior to December 22, 2020, provided that such obligations shall not exceed the amount set forth for such employee in Schedule E/F filed in the Chapter 11 Cases as of March 1, 2021. Any such payments made pursuant to the APA will reduce, dollar for dollar, any claims such employee has against the Debtors, first against any Priority Claim, and then against any General Unsecured Claim.

### I.    Other Motions and Orders

On March 1, 2021, the Chapter 11 Trustee filed his *Motion of the Chapter 11 Trustee for Entry of an Order (I) Authorizing (A) Rejection of ML7 211 College LLC Lease and (B) Abandonment of Certain Personal Property, if any, Each Effective as of March 1, 2021 and (II) Granting Related Relief* [Docket No. 197] (the "**Lease Rejection Motion**"), pursuant to which the Chapter 11 Trustee sought authority to reject the Debtors' office lease located in Princeton, New Jersey. On March 24, 2021, the Bankruptcy Court approved the Lease Rejection Motion [Docket No. 227].

On April 8, 2021, the Chapter 11 Trustee filed his *Motion of Chapter 11 Trustee for Entry of an Order Authorizing Payment of Prepetition Employee Benefit Obligations* [Docket No. 277] (the "**Employee Benefits Motion**"), seeking an order authorizing the payment of certain prepetition employee benefit plan obligations owed by the Debtors for the benefit of the Debtors' employees in the amount of $71,944.02. On April 30, 2021, the Court entered an order granting the Employee Benefits Motion [Docket No. 292]. Following entry of that order, the Chapter 11 Trustee worked with the 401(k) plan administrator and ERISA counsel to make all necessary payments and terminate the 401(k) plan as intended. However, after further review of the Debtors' books and records, the Chapter 11 Trustee determined that the Debtors' obligations under the 401(k) plan exceeded $71,944.02.

On May 27, 2021, the Chapter 11 Trustee filed his *Motion of the Chapter 11 Trustee for Entry of an Amended Order Authorizing Payment of Prepetition Employee Benefit Obligations* [Docket No. 320] (the "**Second Employee Benefits Motion**"), seeking entry of an amended order authorizing the payment of certain prepetition employee benefit plan obligations in the revised amount of up to $130,000.00. On June 22, 2021, the Bankruptcy Court entered an order granting the Second Employee Benefits Motion [Docket No. 333].[5]

### J.    Claim Objections

#### 1.    Objection to Claim No. 14

On March 29, 2021, Mallikarjuna Desireddy filed Proof of Claim No. 14-1 ("**Claim No. 14-1**") in the amount of $72,970.28 for certain credit card obligations on behalf of Chase Bank claiming to be a "guarantor, surety, endorser, or other codebtor" of the Debtor. On April 19, 2021, Mr. Desireddy amended Claim 14-1 by filing Proof of Claim No. 14-2 (the "**Claim No. 14-2**", together with Claim No. 14-1, "**Claim No. 14**") for $74,006.95 on behalf of Chase Bank for the same corporate credit card obligations. The reason for the increase in the claim amount from the amount listed in Claim 14-1 appears to be inclusion of post-petition fees and interest.

On June 22, 2021, the Committee filed its *Objection to Proofs of Claim Nos. 14-1 and 14-2 of Chase Bank (as Filed by Mallikarjuna Desireddy)* and *Memorandum of Points and Authorities* in support thereof [Docket No. 335] ("**Objection to Claim No. 14**"), seeking disallowance of Claim No. 14 in its entirety. On July 26, 2021, the Bankruptcy Court entered an order granting the Committee's Objection to Claim No. 14 [Docket No. 347] and disallowing Claim No. 14.

#### 2.    Objection to Claim Nos. 15 and 18

On April 3, 2021, Neopharma UAE filed Proof of Claim No. 15 for $2,299,902.00 ("**Claim No. 15**") for "additional finance [provided to the Debtor] to meet the operational cash deficit." *See* Claim No. 15. On April 8, 2021, Neopharma UAE filed Proof of Claim No. 18 for $14.9 million ("**Claim No. 18**") also for "Additional Paid in Capital." *See* Claim No. 18.

On June 22, 2021, the Committee filed its *Objection to Proofs of Claim Nos. 15 and 18 of Neopharma UAE* and *Memorandum of Points and Authorities* in support thereof [Docket No. 334] ("**Objection to Claim Nos. 15 and 18**"), seeking disallowance of Claim No. 15 and Claim No. 18 in their entirety.

On July 22, 2021, Neopharma UAC filed a response to the Objection to Claim Nos. 15 and 18, solely with respect to and in support of Claim No. 15 [Docket No. 344].

---

[5] Because the Debtors failed to ensure that participant contributions and matching employer contributions were remitted to the Debtors' 401(k) Plan prior to the Petition Date, the U.S. Department of Labor opened an investigation and found that the Debtors breached fiduciary duties and violated ERISA §§ 404(a)(1)(A) and (B), 403(c)(1), 406(a)(1)(D), and 406(b)(1) and (2). However, because the Chapter 11 Trustee took corrective action through the Employee Benefits Motion and the Second Employee Benefits Motion, the U.S. Department of Labor has closed the investigation and is not assessing any penalties or taking any action against the Debtors.

16

On August 16, 2021, the Bankruptcy Court entered an order (i) holding the Objection Claim Nos. 15 and 18 in abeyance with respect to Claim No. 15 and (ii) disallowing Claim No. 18 in its entirety. [Docket No. 379]. A status conference on the Objection to Claim Nos. 15 and 18 with respect to Claim No. 15 is set for September 16, 2021. Claim No. 15 is a Disputed Insider Claim, the allowance of which remains unresolved as of the date hereof.

### 3.      Objection to Claim No. 34

On April 21, 2021, Mr. Desireddy filed Proof of Claim No. 34-1 for $175,553.39 ("**Claim No. 34**") on account of unpaid wages earned while working for the Debtor prior to the Petition Date.

On June 22, 2021, the Committee filed its *Objection to Claim No. 34 of Mallikarjuna Desireddy* and *Memorandum of Points and Authorities* in support thereof [Docket No. 336] ("**Objection to Claim No. 34**"), seeking disallowance of Claim No. 34 in its entirety.

On August 2, 2021, Mr. Desireddy filed a response to Objection to Claim No. 34 [Docket No. 354].

At the hearing on the Objection to Claim No. 34, the Committee stated that the Objection to Claim No. 34 was moot because Mr. Desireddy's response contained an amendment to Claim No. 34. The Bankruptcy Court denied the Objection to Claim No. 34 as moot without prejudice to object to Mr. Desireddy's amended Claim No. 34. Claim No. 34, as amended, has not been disallowed and is not Disputed as of the date hereof.

## IV.    SUMMARY OF THE CHAPTER 11 PLAN

This section provides a summary of the structure and means for implementation of the Plan and the classification and treatment of Claims and Equity Interests under the Plan and is qualified in its entirety by reference to the Plan (as well as the Exhibits thereto and definitions therein).

The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statement of such terms and provisions.

The Plan itself and the documents referred to therein control the actual treatment of Claims against and Equity Interests in the Debtors under the Plan and will, upon the occurrence of the Effective Date, be binding upon all holders of Claims against and Equity Interests in the Debtors, the Debtors' estates, all parties receiving property under the Plan, and other parties in interest. In the event of any conflict, inconsistency, or discrepancy between this Disclosure Statement and the Plan, and/or any other operative document, the terms of the Plan, and/or such other operative document, as applicable, shall govern and control; provided that, in any event, the terms of the Plan shall govern and control over all other related documents.

### A.      Treatment of Unclassified Claims

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Compensation Claims) and Priority Tax Claims have not been classified and the respective treatment of such unclassified Claims is set forth in Article IV of the Plan.

### 1.      Administrative Claims

a.   <u>Administrative Claims</u>. Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Administrative Claim, each Holder of an Allowed Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash from the Distribution Fund (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Claim is due or as soon thereafter as is reasonably practicable, (b) if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, or (c) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

b.   <u>Statutory Fees.</u> All Statutory Fees incurred prior to the Effective Date shall be paid by the Chapter 11 Trustee on the Effective Date. After the Effective Date, the Liquidating Trustee shall pay any and all such fees when due and payable from the Liquidating Trust Assets, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until such time that the case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

c.   <u>Professional Compensation Claims.</u> Allowed Professional Compensation Claims of the Professionals and the Chapter 11 Trustee shall be paid (a) as soon as is reasonably practicable following the later of (i) the Effective Date and (ii) the date upon which the order relating to any such Allowed Professional Compensation Claim is entered by the Bankruptcy Court, or (b) upon such other terms as agreed by the Holder of such an Allowed Professional Compensation Claim. Any Allowed Professional Compensation Claim that is not paid in full in Cash on the Effective Date will become Allowed Claims against the Liquidating Trust and will be paid from the Distribution Fund before other Allowed General Unsecured Claims, in accordance with the Plan.

79794562.1

2.      **Bar Dates For Administrative Claims**

   a.   General. Requests for payment of Administrative Claims arising before the Confirmation Date (including, without limitation, any claims based on substantial contribution in the Chapter 11 Cases) must be included within an application (setting forth the amount of, and basis for, such Administrative Claims, together with documentary evidence) and Filed and served on respective counsel for the Chapter 11 Trustee or the Liquidating Trustee, the Committee, and the U.S. Trustee no later than twenty-one (21) days after the Confirmation Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. The Plan Proponents will serve all Holders of Claims or Equity Interests a notice of the Administrative Claim Bar Date upon the earlier of confirmation of the Plan or when approved by Order of the Bankruptcy Court. Holders of Administrative Claims that are required to File an application for payment of such Claims and that do not File such requests by the Administrative Claim Bar Date shall be forever barred from asserting such Claims against the Debtors, their Estates or any Estate Property, or the Liquidating Trust.

   b.   Professionals. All professionals or other Persons requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) and 1103 for services rendered before the Effective Date (including, without limitation, any compensation or commission requested by any professional) shall File their Professional Compensation Claims and serve on the Chapter 11 Trustee or the Liquidating Trust, the Committee, the U.S. Trustee, and the Post-Confirmation Service List an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses may be filed by any party in interest and must be filed and served on the Chapter 11 Trustee or Liquidating Trust, the Committee, the U.S. Trustee, and the Post-Confirmation Service List and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date the application is filed, or the Bankruptcy Court may enter an order authorizing the fees without a hearing.

3.      **Allowed Priority Tax Claims**

   Except to the extent the Plan Proponents and the Holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Chapter 11 Trustee or the Liquidating Trustee shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash from the Distribution Fund, in an amount equal to such Allowed Priority Tax Claim, on the later of: (a) the Effective Date and (b) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as

soon thereafter as is reasonably practicable. The Plan Proponents estimate that the aggregate amount of Allowed Priority Tax Claims does not exceed $10,000.00.

**B.      Classification and Treatment of Claims and Equity Interests**

Pursuant to Bankruptcy Code section 1122, set forth below is a designation of Classes or Claims and Equity Interests. A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim or Equity Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is Allowed in that Class and such Claim or Equity Interest has not been paid, released, or otherwise settled prior to the Effective Date.

**1.      Class 1:  Other Priority Claims**

Except to the extent that a Holder of an Allowed Other Priority Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Other Priority Claim has not been paid in full prior to the Effective Date, each such Holder of an Allowed Other Priority Claim shall receive Cash from the Distribution Fund in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Chapter 11 Trustee or Liquidating Trustee, as the case may be, and the Holder of the Allowed Other Priority Claim.

The Plan Proponents estimate that the aggregate amount of Allowed Other Priority Claims does not exceed $575,000. Class 1 is Unimpaired and is deemed to accept the Plan.

**2.      Class 2: Allowed Secured Claims**

Except to the extent that a Holder of an Allowed Secured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Secured Claim has not been paid in full prior to the Effective Date, each Holder of an Allowed Secured Claim, at the option of the Plan Proponents or the Liquidating Trustee, shall (i) be paid in full in Cash from the Distribution Fund; (ii) receive the collateral securing its Allowed Other Secured Claim, plus post-petition interest to the extent required under Bankruptcy Code section 506(b); or (iii) receive other treatment rendering such Claim Unimpaired in accordance with Bankruptcy Code section 1124, in each case on the later of the Effective Date and the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is reasonably practicable. In the event the Plan Proponents or the Liquidating Trustee treat a Claim under clause (i) of this Section, the Liens securing such Allowed Secured Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization, or approval of any Person. The Plan Proponents and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Secured Claims.

The Plan Proponents estimate that the aggregate amount of Allowed Secured Claims will be $0.00. Class 2 is Unimpaired and is deemed to accept the Plan.

### 3.    Class 3:  Allowed Non-Priority Wage Claims

Except to the extent that a Holder of an Allowed Non-Priority Wage Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Non-Priority Wage Claim has not been paid in full prior to the Effective Date, each such Holder of an Allowed Non-Priority Wage Claim shall receive Cash from the Distribution Fund in an amount equal to such Allowed Non-Priority Wage Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Non-Priority Wage Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Chapter 11 Trustee or Liquidating Trustee, as the case may be, and the Holder of the Allowed Non-Priority Wage Claim.

The Plan Proponents estimate that the aggregate amount of Allowed Non-Priority Wage Claims does not exceed $600,000. Class 3 is Unimpaired and is deemed to accept the Plan.

### 4.    Class 4: Allowed General Unsecured Claims

Except to the extent that a Holder of an Allowed General Unsecured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive such Holder's Pro Rata Share of the beneficial interest in the Liquidating Trust and as a Liquidating Trust Beneficiary shall receive, on a distribution date, their Pro Rata Share of net Cash derived from the Liquidating Trust Assets available for Distribution on each such distribution date as provided under the Plan and Liquidating Trust Agreement, as full and complete satisfaction of the Claims against the Liquidating Trust.

The Plan Proponents estimate that the aggregate amount of Allowed General Unsecured Claims will be approximately $4.8 million to $7.9 million based on the Debtors' Schedules and Claims asserted against the Estates. Class 4 is Impaired and entitled to vote to accept or reject the Plan with respect to Class 4 General Unsecured Claims. The Plan Proponents estimate that the projected recovery of Holders of Claims in Class 4 will be 55% – 83%.

### 5.    Class 5:  Subordinated Insider Claims

Except to the extent that a Holder of an Allowed Subordinated Insider Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Subordinated Insider Claim has not been paid by any applicable Debtor prior to the Effective Date, each Holder of an Allowed Subordinated Insider Claim shall receive such Holder's Pro Rata share of Cash, if any, from the Remaining Funds. Class 5 is Impaired. The Plan Proponents estimate that Holders of Subordinated Insider Claims will receive no distribution under the Plan. Holders of Claims in Class 5 are deemed to have rejected the Plan with respect to Class 5 Claims pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan with respect to Class 5 Claims.

6.      **Class 6: Equity Interests in Debtor Neopharma**

Class 6 is Impaired. Holders of Equity Interests in Neopharma will receive no distribution under the Plan and, on the Effective Date, all Equity Interests in Neopharma shall be deemed cancelled, terminated, extinguished, and void. Holders of Interests in Class 6 are deemed to have rejected the Plan with respect to Class 6 Equity Interests pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan with respect to Class 6 Equity Interests.

7.      **Class 7: Equity Interests in Debtor Neopharma Tennessee**

Class 7 is Impaired. Holders of Equity Interests in Neopharma Tennessee will receive no distribution under the Plan and, on the Effective Date, all Equity Interests in Neopharma Tennessee shall be deemed cancelled, terminated, extinguished, and void. Holders of Equity Interests in Class 7 are deemed to have rejected the Plan with respect to Class 7 Equity Interests pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan with respect to Class 7 Equity Interests.

C.      **Acceptance or Rejection of the Plan**

1.      **Impaired Classes Entitled to Vote**

Holders of Claims in Class 4 are impaired and are entitled to vote as a Class to accept or reject the Plan. Accordingly, only the Holders of Claims in Class 4 shall be solicited with respect to the Plan.

2.      **Acceptance by Class 4**

In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), an impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

3.      **Presumed Acceptances by Classes 1, 2, and 3**

Classes 1, 2, and 3 are unimpaired under the Plan. Under Bankruptcy Code section 1126(f), holders of such unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of such unimpaired Claim Holders shall not be solicited.

4.      **Deemed Rejection by Classes 5, 6, and 7**

Classes 5, 6 and 7 are impaired under the Plan and are deemed to reject the Plan. Therefore, Holders of Claims in Class 5 and Equity Interest Holders in Classes 6 and 7 are not entitled to vote to accept or reject the Plan.

### D.       Treatment of Executory Contracts and Unexpired Leases

#### 1.       Rejection of Executory Contracts and Unexpired Leases

The Bidding Procedures Order and the Sale Order contemplate the treatment of certain executory contracts and unexpired leases. While nothing in the Plan or Disclosure Statement shall be deemed to supersede the Bidding Procedures Order and Sale Order, Article VIII of the Plan is included out of an abundance of caution.

All executory contracts and unexpired leases of the Debtors that have not been assumed, assigned, or rejected, prior to the Effective Date shall be deemed rejected.

#### 2.       Rejection Claim Bar Date

Each Claim resulting from the rejection of an executory Contract or unexpired Lease pursuant to Section 8.2 of the Plan shall be filed with the Bankruptcy Court no later than the Rejection Claim Bar Date. Any Claim resulting from the rejection of an executory contract or unexpired lease not filed by the applicable deadline shall be discharged and forever barred, and shall not be entitled to any Distributions under the Plan. The Liquidating Trustee shall have the right to object to any rejection damages Claim.

#### 3.       Indemnification Obligations

Except as provided by the D&O Policies, any obligation of the Debtors to indemnify, reimburse, or limit the liability of any Person, including any officer or director of the Debtors, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtors, relating to any acts or omissions occurring before the Effective Date, whether arising pursuant to charter, bylaws, contract or applicable state law, shall be deemed to be and (a) shall be treated as (solely to the extent timely filed) as a General Unsecured Claim and/or Executory Contract and shall be deemed to be rejected, canceled, and discharged pursuant to the Plan as of the Effective Date and (b) any and all Claims resulting from such obligations are disallowed under Bankruptcy Code section 502(e) or other applicable grounds, including Bankruptcy Code section 502(d) or violations of Bankruptcy Code sections 327, 362, 363 or other requirements of the Bankruptcy Code without the need to file any formal objections, or if any court of applicable jurisdiction rules to the contrary, such Claim shall be estimated pursuant to Bankruptcy Code section 502(c) in the amount of $0 or such other amount as the Bankruptcy Court shall determine.

### E.       Injunctions, Releases, and Discharge

#### 1.       Injunction

All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the later of (a) the Effective Date, or (b) the date indicated in the order providing for such injunction or stay. Notwithstanding the foregoing, nothing herein shall be otherwise deemed to modify, limit, amend, or supersede any injunctions or stays granted in the Sale Order.

Except as otherwise provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against any property that is to be distributed under the terms of the Plan on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a setoff, right, or subrogation of any kind against any debt, liability, or obligation due to the Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that such entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order; provided, further, that the foregoing provisions of this provision shall not apply to any acts, omissions, claims, causes of action, or other obligations expressly set forth in and preserved by this Plan or any defenses thereto. Notwithstanding the foregoing, nothing herein shall be otherwise deemed to modify, limit, amend, or supersede any injunctions or stays granted in the Sale Order.

### 2.    Exculpation

None of (a) the Chapter 11 Trustee or any of his attorneys, financial advisors, or any other professional persons employed by the Chapter 11 Trustee; or (b) the Committee and each of its members or any of their employees, officers, directors, agents, representatives, attorneys, financial advisors, or any other professional Persons employed by any of them (the Persons identified in (a) and (b) are collectively referred to as "**Estate Exculpated Parties**"), shall have or incur any liability to any Person under any theory of liability for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the Disclosure Statement, the Plan, the pursuit of Confirmation, the consummation of the Plan, the administration of the Plan, the property to be liquidated and/or distributed under the Plan or any prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtors, except for their willful or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### F.    Conditions to Effectiveness

The Plan will not be effective unless (a) the conditions to confirmation above have been either satisfied, or waived, by the Plan Proponents, (b) the Confirmation Order has been entered by the Bankruptcy Court, and no stay or injunction is in effect with respect thereto, (c) no breach or failure to comply with the terms of the Confirmation Order or any other material Order of the Court shall have occurred and be continuing, and (d) the Liquidating Trust has been fully funded as provided in the Plan.

## V.  RISK FACTORS

### A.  Risks Related to Bankruptcy

#### 1.  Parties May Object to the Plan's Classification of Claims and Equity Interests

Bankruptcy Code Section 1122 provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Plan Proponents believe that the classification of the Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims or Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

#### 2.  The Plan Proponents May Not Be Able to Obtain Confirmation of the Plan

With regard to any proposed plan of liquidation, the Plan Proponents may not receive the requisite acceptances to confirm a plan. In the event that votes from Claims in Class 4 are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Plan Proponents intend to seek confirmation of the Plan by the Bankruptcy Court.

Even if the requisite acceptances of a proposed plan are received, the Bankruptcy Court might not confirm the Plan as proposed if the Bankruptcy Court finds that any of the statutory requirements for confirmation under Bankruptcy Code section 1129 have not been met.

#### 3.  The Conditions Precedent to the Effective Date of the Plan May Not Occur

As more fully set forth in the Plan, the Effective Date is subject to certain conditions precedent. If such conditions precedent are not met or waived, the Effective Date will not occur.

#### 4.  Allowed Claims May Exceed Estimates

The projected distributions set forth in this Disclosure Statement are based upon, among other things, good faith estimates of the total amounts of Claims that will ultimately be Allowed. The actual amount of Allowed Claims could be materially greater than anticipated, which will impact the distributions to be made to holders of Claims.

The Chapter 11 Trustee (and subsequently, the Liquidating Trustee) will reconcile filed claims and reserves the right to object or compromise any filed claims on all applicable grounds. Any increase in the aggregate total dollar amount of Priority Unsecured Non-Tax Claims, Secured Claims, Non-Priority Wage Claims, and General Unsecured Claims will only reduce the Distributions.

**B.      Risks Related to Financial Information**

The financial information contained in this Disclosure Statement has not been audited. In preparing this Disclosure Statement, the Plan Proponents relied on financial data derived from the Debtors' books and records and schedules and statements that was available at the time of such preparation. Although the Plan Proponents have used reasonable efforts to assure the accuracy of the financial information provided in this Disclosure Statement  the Plan Proponents are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

## VI.     CONFIRMATION OF THE PLAN

**A.      Requirements for Confirmation of the Plan**

Among the requirements for the Confirmation of the Plan is that the Plan (i) is accepted by all Impaired Classes of Claims or Equity Interests, or, if rejected by an Impaired Class of Claims or Equity Interests, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Impaired Class of Claims or Equity Interests; (ii) is feasible; and (iii) is in the "best interests" of Holders of Claims or Equity Interests.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of Bankruptcy Code section 1129. The Plan Proponents believe that: (i) the Plan satisfies or will satisfy all of the necessary statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtors and the Plan Proponents have complied or will have complied with all of the necessary requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, in addition to other applicable requirements, the Plan Proponents believe that the Plan satisfies or will satisfy the following applicable Confirmation requirements of Bankruptcy Code section 1129:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors and the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment: (1) made before the Confirmation of the Plan is reasonable; or (2) is subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation of the Plan.

- Either each holder of a Claim or Equity Interest in an Impaired Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or Equity Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the

Debtors were liquidated on the Effective Date of the Plan under chapter 7 of the Bankruptcy Code.

- Each Class of Claims or Equity Interests that is entitled to vote on the Plan will have accepted the Plan.

- Except to the extent a different treatment is agreed to, the Plan provides that all Administrative Claims and Allowed Priority Tax Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto.

- All accrued and unpaid fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

**B.     Best Interests of Creditors**

The Bankruptcy Code requires that the Bankruptcy Court determine that a plan accepted by the requisite number of creditors in an impaired class provides each such member of each impaired class of claims and interests a recovery that has value, on the effective date, at least equal to the value of the recovery that each such creditor would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

The Bankruptcy Code further requires that the Bankruptcy Court determine that a plan is in the best interests of each holder of a claim or interest in any such impaired class which has not voted to accept the plan. Thus, if an impaired class does not vote unanimously to confirm the plan, the best interests test requires that the Bankruptcy Court find that the plan provides to each member of such impaired class a recovery on account of the class member's claim or interest that has a value, on the effective date, at least equal to the value of the recovery that each such class member would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

Here, the Plan Proponents believe the Plan satisfies the best interests test because the recoveries expected to be available to Holders of Allowed Claims under the Plan will be greater than the recoveries expected in a liquidation under chapter 7 of the Bankruptcy Code.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses (including those incurred by a chapter 7 trustee) are next to receive payment. Unsecured creditors are paid from any remaining proceeds, according to their respective priorities. Unsecured creditors with the same priority share

27

in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

Substantially all of the Debtors' Assets have already been sold and transferred to Purchaser under the Sale Order. While a liquidation under chapter 7 of the Bankruptcy Code would have the same goal, the Plan provides the best source of recovery for several reasons. First, liquidation under chapter 7 of the Bankruptcy Code would not provide for a timely distribution. Second, Distributions would likely be smaller because of the fees and expenses incurred in a liquidation under chapter 7 of the Bankruptcy Code.

At this time, there are no alternative plans available to the Debtors. Following the close of Sale, the Debtors have few assets remaining. Therefore, the Plan Proponents believe that the Plan provides the greatest possible value under the circumstances, and has the greatest chance to be confirmed and consummated.

## C.    Feasibility

The Bankruptcy Code requires that, in order for a plan to be confirmed, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or need for further reorganization of the debtor unless contemplated by the plan.

Here, the Plan provides for the liquidation and distribution of all of the Debtors' assets. Accordingly, the Plan Proponents believe all chapter 11 plan obligations will be satisfied without the need for further reorganization of the Debtors.

## D.    Acceptance by Impaired Classes

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or interests that is impaired under a plan accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.

A class is "impaired" unless a plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the interest entitles the holder of such claim or interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Bankruptcy Code Section 1126(c) defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims in that class, counting only those claims that actually voted to accept or reject the plan. Thus, a Class of Impaired Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually voting cast their Ballots in favor of acceptance.

## E.    Confirmation Without Acceptance by All Impaired Classes

Bankruptcy Code Section 1129(b) allows a Bankruptcy Court to confirm a plan even if all

28

impaired classes have not accepted it, _provided_ that the plan has been accepted by at least one impaired class, determined without including the acceptance of the plan by any insider. Notwithstanding an impaired class's rejection or deemed rejection of the plan, such plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminate unfairly" (as discussed below) and is "fair and equitable" (as discussed below) with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, to the extent applicable, the Plan Proponents request Confirmation of the Plan under Bankruptcy Code section 1129(b). The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

### 1.  No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that reject or are deemed to have rejected a plan and that are of equal priority with another class of claims or interests that is receiving different treatment under such plan. The test does not require that the treatment of such classes of claims or interests be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (_e.g._, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly, and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class. The Plan Proponents submit that if the Plan Proponents "cram down" the Plan pursuant to Bankruptcy Code section 1129(b), the Plan is structured such that it does not "discriminate unfairly" against any rejecting Class.

### 2.  Fair and Equitable Test

The "fair and equitable" test applies to classes that reject or are deemed to have rejected a plan and are of different priority and status vis-à-vis another class (_e.g._, secured versus unsecured claims, or unsecured claims versus equity interests), and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class, including interest. As to the rejecting class, the test sets different standards depending upon the type of claims or interests in such rejecting class. The Plan Proponents submit that if they "cram down" the Plan pursuant to Bankruptcy Code section 1129(b), the Plan is structured such that the applicable "fair and equitable" standards are met.

## VII.   TAX CONSEQUENCES OF THE PLAN

**THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT**

OF ANY STATE, LOCAL OR FOREIGN TAX LAWS AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

## VIII.   LIQUIDATING TRUST MATTERS

### A.   Securities Related Matters

As provided in Section 13.3 of the Plan, the Plan Proponents believe that any rights issued under, pursuant to or in effecting the Plan, and the offering and issuance thereof by any party, shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation Bankruptcy Code section 1145.

### B.   Tax Treatment

As provided in Section 6.13 of the Plan, the Liquidating Trust established under the Plan is established for the purpose of Distributions to Holders of Allowed Claims by liquidating the Liquidating Trust Assets transferred to the Liquidating Trust and performing related and incidental functions referenced in the Liquidating Trust Agreement, and the Liquidating Trust shall have no objective of continuing or engaging in any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the trust. The purpose of the Liquidating Trust is to distribute the Liquidating Trust Assets and the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Liquidating Trust, to the Beneficiaries in accordance with the terms of the Plan. No business activities will be conducted by the Liquidating Trust other than those associated with or related to the liquidation of the Liquidating Trust Assets. It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of the Treasury Regulations Section 301.7701-4(d). All parties and Beneficiaries shall treat the transfers in trust described herein as transfers to the Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including Sections 61(a)(12), 483, 1001, 1012, and 1274 thereof). All the parties and Beneficiaries shall treat the transfers in trust as if all the transferred assets, including all the Liquidating Trust Assets, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Liquidating Trust. The Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Liquidating Trust and the owners of the Liquidating Trust. The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b). All parties, including the Beneficiaries and the Liquidating Trustee, shall value the Liquidating Trust Assets consistently, and such valuations shall be used for all federal income tax purposes. Beneficiaries may wish to consult with a tax professional regarding the tax consequences of holding a Beneficial Interest in or receiving a Distribution from the Liquidating Trust.

## IX.   **RECOMMENDATION**

In the opinion of the Plan Proponents, the Plan is superior and preferable to the alternatives described in this Disclosure Statement. Accordingly, the Plan Proponents recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support Confirmation.

Dated: September 16, 2021                    */s/ Gary M. Murphey*
                                                              Gary M. Murphey
                                                              Chapter 11 Trustee of Neopharma, Inc. and
                                                              Neopharma Tennessee, LLC

Dated: September 16, 2021                    */s/ Armando Fagundes*
                                                              Armando Fagundes
                                                              Committee Chairperson
                                                              Official Committee of Unsecured Creditors

79794562.1

## Exhibit A

Plan of Liquidation

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re | Case No. 2:20-bk-52015-SDR |
| NEOPHARMA, INC., | Chapter 11 |
| Debtor. | |
| In re | Case No. 2:20-bk-52016-SDR |
| NEOPHARMA TENNESSEE LLC., | |
| Debtor. | Jointly Administered |

---

**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF**
**NEOPHARMA, INC. AND NEOPHARMA TENNESSEE, LLC**

---

Dated: September 16, 2021.

| **POLSINELLI PC** | **BUCHALTER, P.C.** | **WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER, PLLC** |
|---|---|---|
| David E. Gordon | Jeffrey K. Garfinkle | |
| Georgia Bar No. 111877 | (Cal Bar. No. 153496; Wash. Bar No. 55968) | Gregory C. Logue |
| (Admitted *Pro Hac Vice*) | (Admitted *Pro Hac Vice*) | (Tenn. Bar. No. 012157) |
| Caryn E. Wang | Julian I. Gurule | 900 S. Gay Street, Suite 900 |
| Georgia Bar No. 542093 | (Cal. Bar. No. 252160) | Knoxville, TN 37902 |
| (Admitted *Pro Hac Vice*) | (Admitted *Pro Hac Vice*) | Telephone: (865) 215-1000 |
| 1201 West Peachtree Street NW | 18400 Von Karman Ave., Suite 800 | glogue@wmbac.com |
| Atlanta, Georgia 30309 | Irvine, CA 92612 | |
| Telephone: (404) 253-6000 | Telephone: (949) 760-1121 | *Co-counsel to Official* |
| Facsimile: (404) 684-6060 | jgarfinkle@buchalter.com | *Committee of Unsecured* |
| dgordon@polsinelli.com | jgurule@buchalter.com | *Creditors* |
| cewang@polsinelli.com | | |
| *Counsel to Gary M. Murphey As Chapter 11 Trustee* | *Co-counsel to Official Committee of Unsecured Creditors* | |

# TABLE OF CONTENTS

ARTICLE I SUMMARY OF THE PLAN ...................................................................... 1

ARTICLE II DEFINITIONS, RULES OF INTERPRETATION, AND
            CONSTRUCTION OF TERMS ................................................. 1

ARTICLE III DESIGNATION OF CLAIMS AND EQUITY INTERESTS ............................. 2

   3.1    Summary .................................................................................... 2

   3.2    Identification of Classes ........................................................... 2

   3.3    Unimpaired Classes ................................................................. 2

   3.4    Impaired Classes/Entitled to Vote .......................................... 2

   3.5    Impaired Classes/Deemed to Reject ....................................... 3

   3.6    Elimination of Classes for Voting Purposes ........................... 3

   3.7    Controversy Concerning Classification, Impairment or Voting Rights ................ 3

ARTICLE IV TREATMENT OF UNCLASSIFIED CLAIMS ............................................. 3

   4.1    General ..................................................................................... 3

   4.2    Payment of Statutory Fees ....................................................... 3

   4.3    Administrative Claims ............................................................. 4

   4.4    Professional Compensation Claims ......................................... 4

   4.5    Allowed Priority Tax Claims ................................................... 5

ARTICLE V CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
           AND EQUITY INTERESTS ..................................................... 5

   5.1    Treatment of Other Priority Claims (Class 1) ......................... 5

   5.2    Treatment of Allowed Secured Claims (Class 2) .................... 5

   5.3    Treatment of Allowed Non-Priority Wage Claims (Class 3) ............... 6

   5.4    Treatment of Allowed General Unsecured Claims (Class 4) ............... 6

   5.5    Treatment of Subordinated Insider Claims (Class 5) ............... 7

   5.6    Treatment of Equity Interests (Class 6) ................................... 7

   5.7    Treatment of Equity Interests (Class 7) ................................... 7

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE PLAN ...................................... 7

   6.1    Compromise and Settlement .................................................... 7

   6.2    Limited Substantive Consolidation ......................................... 7

   6.3    Continued Corporate Existence ............................................... 8

ii

6.4     Management and Board of Directors of the Debtors ............................................. 8

6.5     Creation of the Liquidating Trust ....................................................................... 8

6.6     Purpose of the Liquidating Trust ........................................................................ 8

6.7     The Liquidating Trustee...................................................................................... 9

6.8     Liquidating Trust Expenses .............................................................................. 11

6.9     Resignation/Removal of the Liquidating Trustee ............................................. 11

6.10    Appointment of Successor Liquidating Trustee ............................................... 11

6.11    Dissolution of the Committee ........................................................................... 11

6.12    Transfer of Assets ............................................................................................ 11

6.13    Tax Treatment of the Liquidating Trust............................................................ 12

6.14    Preservation of Causes of Action..................................................................... 13

6.15    Insurance Policies and Preservation.................................................................. 14

ARTICLE VII PROVISIONS GOVERNING RESOLUTION OF CLAIMS AND
            DISTRIBUTIONS OF PROPERTY UNDER THE PLAN .............................. 14

7.1     Right to Object to Claims ................................................................................. 14

7.2     Deadline for Objecting to Claims ..................................................................... 15

7.3     Right to Request Estimation of Claims.............................................................. 15

7.4     Disallowance of Late Filed Proofs of Claim..................................................... 15

7.5     Distribution Procedures Regarding Allowed Claims.......................................... 15

7.6     Distribution Procedures Regarding Disputed Claims and Equity Interests ......... 17

ARTICLE VIII EXECUTORY CONTRACTS.................................................................. 17

8.1     Rejection of Executory Contracts and Unexpired Leases................................... 17

8.2     Rejection Claim Bar Date ................................................................................. 17

8.3     Indemnification Obligations .............................................................................. 18

ARTICLE IX EFFECT OF REJECTION BY ONE OR MORE CLASSES ............................. 18

9.1     Impaired Classes Entitled to Vote..................................................................... 18

9.2     Acceptance by Class ......................................................................................... 19

9.3     Reservation of Cramdown Rights...................................................................... 19

ARTICLE X EFFECT OF CONFIRMATION..................................................................... 19

10.1    Legally Binding Effect....................................................................................... 19

10.2    Vesting of Property ........................................................................................... 19

ARTICLE XI INJUNCTIONS, RELEASES, AND DISCHARGE ......................................... 19

11.1    No Discharge of the Debtors.............................................................................. 19

78314463.6

11.2    Injunction ................................................................................................................. 19

11.3    Exculpation and Limitation of Liability ............................................................... 20

ARTICLE XII RETENTION OF JURISDICTION ....................................................... 20

12.1    Bankruptcy Court Jurisdiction .............................................................................. 20

12.2    Limitation on Jurisdiction ..................................................................................... 22

ARTICLE XIII MISCELLANEOUS PROVISIONS ..................................................... 22

13.1    Conditions to Effectiveness .................................................................................. 22

13.2    Exemption from Taxes.......................................................................................... 22

13.3    Securities Exemption ............................................................................................ 23

13.4    Defects, Omissions and Amendments of the Plan ............................................... 23

13.5    Due Authorization By Holders of Claims and Equity Interests............................ 23

13.6    Filing of Additional Documentation .................................................................... 23

13.7    Governing Law ..................................................................................................... 24

13.8    Successors and Assigns......................................................................................... 24

13.9    Transfer of Claims or Equity Interests ................................................................. 24

13.10   Notices .................................................................................................................. 24

13.11   U.S. Trustee Fees ................................................................................................. 25

13.12   Implementation ..................................................................................................... 25

13.13   No Admissions ...................................................................................................... 26

ARTICLE XIV SUBSTANTIAL CONSUMMATION ................................................. 26

14.1    Substantial Consummation ................................................................................... 26

14.2    Final Decree .......................................................................................................... 26

iv

## EXHIBITS TO THE PLAN

Glossary of Defined Terms ............................................................................................. Exhibit A

Liquidating Trust Agreement ......................................................................................... Exhibit B

i

# INTRODUCTION

The Chapter 11 Trustee and the Committee in the above-referenced Chapter 11 Cases (collectively, the "**Plan Proponents**") propose this Plan of Liquidation. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, property and results of operations, and for a summary of the Plan and certain related matters.

All are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. No materials, other than the Disclosure Statement and any exhibits and schedules attached thereto or referenced therein, have been approved by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

For avoidance of doubt, the Plan applies and preserves the maximum global jurisdiction possible under applicable U.S. law, including, without limitation, over the assets of the Debtors wherever located. The Plan is also consistent with and implements the decisions of the Bankruptcy Court that are described in the Disclosure Statement.

# ARTICLE I
# SUMMARY OF THE PLAN

An overview of the Plan is set forth in the Disclosure Statement. Generally, the Plan provides for (1) the transfer of the Liquidating Trust Assets to the Liquidating Trust, (2) the preservation and retention of the Causes of Action for the benefit of the Liquidating Trust and the Liquidating Trust Beneficiaries, and (3) the Distribution to holders of Allowed Claims in accordance with the priority scheme established by the Bankruptcy Code and the terms of the Plan.

# ARTICLE II
# DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS

**2.1**     All capitalized terms not defined elsewhere in the Plan shall have the meanings assigned to them in the Glossary of Defined Terms attached as <u>Exhibit A</u> to the Plan. Any capitalized term used in the Plan that is not defined herein has the meaning ascribed to that term in the Bankruptcy Code and/or Bankruptcy Rules.

**2.2**     For purposes of the Plan, any reference in the Plan to an existing document or exhibit filed or to be filed means that document or exhibit as it may have been or may be amended, supplemented, or otherwise modified.

**2.3**     The words "herein," "hereof" and "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan, unless the context requires otherwise. Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter.

**2.4**     Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan.

1

**2.5**    The rules of construction set forth in Bankruptcy Code section 102 shall apply.

**2.6**    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE III
# DESIGNATION OF CLAIMS AND EQUITY INTERESTS

**3.1**    **Summary**

Pursuant to Bankruptcy Code section 1122, a Claim or Equity Interest is placed in a particular Class for purposes of voting on the Plan and receiving Distributions under the Plan only to the extent (a) the Claim or Equity Interest qualifies within the description of that Class; (b) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Class or Classes; and (c) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date. A Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest, including a Disputed Claim or Equity Interest, is not in any Class, and, notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim which is not an Allowed Claim. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims, Statutory Fees, and Priority Tax Claims are not classified under the Plan and are excluded from the following Classes.

**3.2**    **Identification of Classes**

The following is a designation of the classes of Claims and Equity Interests under the Plan.

Class 1: Other Priority Claims
Class 2: Secured Claims
Class 3: Non-Priority Wage Claims
Class 4: General Unsecured Claims
Class 5: Subordinated Insider Claims
Class 6: Equity Interests in Neopharma
Class 7: Equity Interests in Neopharma Tennessee

**3.3**    **Unimpaired Classes**

Classes 1, 2, and 3 are Unimpaired under the Plan. Under Bankruptcy Code section 1126(f), holders of Claims in Classes 1, 2, and 3 are conclusively presumed to have accepted the Plan and are therefore not entitled to vote to accept or reject the Plan.

**3.4**    **Impaired Classes/Entitled to Vote**

Class 4 is Impaired under the Plan. Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

2

78314463.6

### 3.5    Impaired Classes/Deemed to Reject

Classes 5, 6, and 7 are Impaired under the Plan and are deemed to reject the Plan. Therefore, holders of Claims and Equity Interests in Classes 5, 6, and 7 are not entitled to vote to accept or reject the Plan.

### 3.6    Elimination of Classes for Voting Purposes

Any Class of Claims or Equity Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, an Allowed Equity Interest, or a Claim or Equity Interest temporarily allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan by such Class under Bankruptcy Code section 1129(a)(8), and not considered for any purpose at the Confirmation Hearing.

### 3.7    Controversy Concerning Classification, Impairment or Voting Rights

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Equity Interest Holder under the Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (a) the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Cases and (b) any right to payment arising from an equitable remedy for breach of performance. In addition, the Bankruptcy Court may in accordance with section 506(b) of the Bankruptcy Code, conduct valuation hearings to determine the Allowed Amount of any Secured Claim.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

### 4.1    General

The Plan Proponents shall estimate the aggregate amount of Administrative Claims, Professional Compensation Claims, Statutory Fees, Priority Tax Claims, Other Priority Claims, Secured Claims, and Non-Priority Wage Claims and transfer to the Distribution Fund Cash equal to such estimated aggregate amount, including any necessary Cash sufficient to cover any known Disputed Administrative Claims. Any Cash that remains in the Distribution Fund following the resolution of all Claims that are otherwise entitled to receive recoveries from the Distribution Fund shall be promptly transferred by the Liquidating Trustee to the Liquidating Trust Account. For the avoidance of doubt, the Chapter 11 Trustee shall pay all ordinary course claims incurred or accrued prior to the Effective Date.

### 4.2    Payment of Statutory Fees

All Statutory Fees incurred prior to the Effective Date shall be paid by the Chapter 11 Trustee on the Effective Date. After the Effective Date, the Liquidating Trustee shall pay any and all such fees when due and payable from the Liquidating Trust Assets, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until such

3

time that the case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

### 4.3    Administrative Claims

(a)    <u>Payment of Administrative Claims</u>. Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment or has been paid by any applicable Debtor prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Administrative Claim, each Holder of an Allowed Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash from the Distribution Fund (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Claim is due or as soon thereafter as is reasonably practicable, (b) if an Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Expense Claim is due, or (c) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

(b)    <u>Administrative Claims Bar Date</u>.  Requests for payment of Administrative Claims arising before the Confirmation Date (including, without limitation, any claims based on substantial contribution in the Chapter 11 Cases) must be included within an application (setting forth the amount of, and basis for, such Administrative Claims, together with documentary evidence) and Filed and served on respective counsel for the Chapter 11 Trustee or the Liquidating Trustee, the Committee, and the U.S. Trustee no later than twenty-one (21) days after the Confirmation Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. The Plan Proponents will serve all Holders of Claims or Equity Interests a notice of the Administrative Claim Bar Date upon the earlier of confirmation of the Plan or when approved by Order of the Bankruptcy Court. Holders of Administrative Claims that are required to File an application for payment of such Claims and that do not File such requests by the Administrative Claim Bar Date shall be forever barred from asserting such Claims against the Debtors, their Estates or any Estate Property, or the Liquidating Trust.

### 4.4    Professional Compensation Claims

(a)    <u>Payment of Professional Compensation Claims</u>. Allowed Professional Compensation Claims of the Professionals and the Chapter 11 Trustee shall be paid (a) as soon as is reasonably practicable following the later of (i) the Effective Date and (ii) the date upon which the order relating to any such Allowed Professional Compensation Claim is entered by the Bankruptcy Court, or (b) upon such other terms as agreed by the Holder of such an Allowed Professional Compensation Claim. Any Allowed Professional Compensation Claim that is not paid in full in Cash on the Effective Date will become Allowed Claims against the Liquidating Trust and will be paid from the Distribution Fund before other Allowed General Unsecured Claims, in accordance with the Plan.

(b)    <u>Professional Compensation Claims Bar Date</u>.  All professionals or other Persons requesting compensation or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b) and 1103 for services rendered before the Effective Date (including,

4

without limitation, any compensation or commission requested by any professional) shall File their Professional Compensation Claims and serve on the Chapter 11 Trustee or the Liquidating Trust, the Committee, the U.S. Trustee, and the Post-Confirmation Service List an application for final allowance of compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses may be filed by any party in interest and must be filed and served on the Chapter 11 Trustee or Liquidating Trust, the Committee, the U.S. Trustee, and the Post-Confirmation Service List and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date the application is filed, or the Bankruptcy Court may enter an order authorizing the fees without a hearing.

### 4.5    Allowed Priority Tax Claims

Except to the extent the Plan Proponents and the Holder of an Allowed Priority Tax Claim agree to a different and less favorable treatment, the Chapter 11 Trustee or the Liquidating Trustee shall pay, in full satisfaction and release of such Claim, to each holder of a Priority Tax Claim, Cash from the Distribution Fund, in an amount equal to such Allowed Priority Tax Claim, on the later of: (a) the Effective Date and (b) the first Business Day after the date that is 30 calendar days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is reasonably practicable.

The Plan Proponents estimate that the aggregate amount of Allowed Priority Tax Claims does not exceed $10,000.00.

### ARTICLE V
### CLASSIFICATION AND TREATMENT
### OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

### 5.1    Treatment of Other Priority Claims (Class 1)

Except to the extent that a Holder of an Allowed Other Priority Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Other Priority Claim has not been paid in full prior to the Effective Date, each such Holder of an Allowed Other Priority Claim shall receive Cash from the Distribution Fund in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Other Priority Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Chapter 11 Trustee or Liquidating Trustee, as the case may be, and the Holder of the Allowed Other Priority Claim.

The Plan Proponents estimate that the aggregate amount of Allowed Other Priority Claims does not exceed $575,000. Class 1 is Unimpaired and is deemed to accept the Plan.

### 5.2    Treatment of Allowed Secured Claims (Class 2)

Except to the extent that a Holder of an Allowed Secured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Secured Claim has not been paid in full prior to the Effective Date, each Holder of an Allowed Secured Claim, at the option of the Plan Proponents or the Liquidating Trustee, shall (i) be paid in full in Cash from

78314463.6

the Distribution Fund; (ii) receive the collateral securing its Allowed Other Secured Claim, plus post-petition interest to the extent required under Bankruptcy Code section 506(b); or (iii) receive other treatment rendering such Claim Unimpaired in accordance with Bankruptcy Code section 1124, in each case on the later of the Effective Date and the date such Secured Claim becomes an Allowed Secured Claim, or as soon thereafter as is reasonably practicable. In the event the Plan Proponents or the Liquidating Trustee treat a Claim under clause (i) of this Section, the Liens securing such Allowed Secured Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization, or approval of any Person. The Plan Proponents and the Liquidating Trustee specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens relating to the Secured Claims.

The Plan Proponents estimate that the aggregate amount of Allowed Secured Claims will be $0.00. Class 2 is Unimpaired and is deemed to accept the Plan.

### 5.3    Treatment of Allowed Non-Priority Wage Claims (Class 3)

Except to the extent that a Holder of an Allowed Non-Priority Wage Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Non-Priority Wage Claim has not been paid in full prior to the Effective Date, each such Holder of an Allowed Non-Priority Wage Claim shall receive Cash from the Distribution Fund in an amount equal to such Allowed Non-Priority Wage Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date; (ii) the date the Non-Priority Wage Claim becomes an Allowed Claim; or (iii) the date for payment provided by any agreement or arrangement between the Chapter 11 Trustee or Liquidating Trustee, as the case may be, and the Holder of the Allowed Non-Priority Wage Claim.

The Plan Proponents estimate that the aggregate amount of Allowed Non-Priority Wage Claims does not exceed $600,000.  Class 3 is Unimpaired and is deemed to accept the Plan.

### 5.4    Treatment of Allowed General Unsecured Claims (Class 4)

Except to the extent that a Holder of an Allowed General Unsecured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed General Unsecured Claim has not been paid by any applicable Debtor prior to the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive such Holder's Pro Rata share of the beneficial interest in the Liquidating Trust and as a Liquidating Trust Beneficiary shall receive, on a distribution date, their Pro Rata share of net Cash derived from the Liquidating Trust Assets available for Distribution on each such distribution date as provided under the Plan and Liquidating Trust Agreement, as full and complete satisfaction of the Claims against the Liquidating Trust.

The Plan Proponents estimate that the aggregate amount of Allowed General Unsecured Claims will be approximately $4.8 million to $7.9 million based on the Debtors' Schedules and Claims asserted against the Estates. Class 4 is Impaired and entitled to vote to accept or reject the Plan with respect to Class 4 General Unsecured Claims. The Plan Proponents estimate that the projected recovery of Holders of Allowed Claims in Class 4 will be 55% – 83%.

78314463.6

### 5.5    Treatment of Subordinated Insider Claims (Class 5)

Except to the extent that a Holder of an Allowed Subordinated Insider Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Subordinated Insider Claim has not been paid by any applicable Debtor prior to the Effective Date, each Holder of an Allowed Subordinated Insider Claim shall receive such Holder's Pro Rata share of Cash, if any, from the Remaining Funds. Class 5 is Impaired. The Plan Proponents estimate that Holders of Subordinated Insider Claims will receive no distribution under the Plan. Holders of Claims in Class 5 are deemed to have rejected the Plan with respect to Class 5 Claims pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan with respect to Class 5 Claims.

### 5.6    Treatment of Equity Interests (Class 6)

Class 6 is Impaired. Holders of Equity Interests in Neopharma will receive no distribution under the Plan and, on the Effective Date, all Equity Interests in Neopharma shall be deemed cancelled, terminated, extinguished, and void. Holders of Interests in Class 6 are deemed to have rejected the Plan with respect to Class 6 Equity Interests pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan with respect to Class 6 Equity Interests.

### 5.7    Treatment of Equity Interests (Class 7)

Class 7 is Impaired. Holders of Equity Interests in Neopharma Tennessee will receive no distribution under the Plan and, on the Effective Date, all Equity Interests in Neopharma Tennessee shall be deemed cancelled, terminated, extinguished, and void. Holders of Equity Interests in Class 7 are deemed to have rejected the Plan with respect to Class 7 Equity Interests pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan with respect to Class 7 Equity Interests.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

### 6.1    Compromise and Settlement

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan and in the Chapter 11 Cases. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements, provided for in the Plan and the Chapter 11 Cases. The Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estate, and all Holders of Claims and Equity Interests against the Debtors.

### 6.2    Limited Substantive Consolidation

For the purposes of the Chapter 11 Cases and the Plan, all Assets of and Claims against the Debtors shall be deemed to be substantively consolidated. As a result, Claims or Equity

78314463.6

Interests Filed against multiple Debtors seeking recovery of the same debt shall only be entitled to receive a single Distribution from the consolidated Estates in accordance with the Plan to the extent such Claim or Equity Interest is an Allowed Claim or Equity Interest. Any claims of a Debtor against another Debtor shall be disregarded for both voting and distribution purposes.

### 6.3    Continued Corporate Existence

From and after the Effective Date, the Debtors shall continue in existence for the purposes of permitting the Liquidating Trustee to wind down the Debtors' businesses and affairs as expeditiously and efficaciously as reasonably possible, including filing appropriate tax returns and dissolving the Debtors.

On the Effective Date, all matters and actions provided for under the Plan that would otherwise require approval of the board of directors or management of the Debtors shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the board of directors or management of the Debtors.

### 6.4    Management and Board of Directors of the Debtors

Upon the Effective Date, the management and members of the Debtors' board of directors shall no longer serve in such capacity and shall be discharged of all duties in connection therewith.

The Chapter 11 Trustee and the Liquidating Trustee, as the case may be, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such other actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

### 6.5    Creation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be created. The Liquidating Trust shall be governed by the Liquidating Trust Agreement, the Plan, and the Confirmation Order. The Plan Proponents have appointed Gary M. Murphey as the Liquidating Trustee of the Liquidating Trust. The terms of the employment of the Liquidating Trustee are set forth in the Liquidating Trust Agreement, the Plan, or the Confirmation Order. All compensation for the Liquidating Trustee shall be paid solely from the Liquidating Trust Assets in accordance with the Liquidating Trust Agreement. The Liquidating Trustee shall execute the Liquidating Trust Agreement on or before the Effective Date. Except as expressly provided in the Plan, the Liquidating Trust is not, and shall not be deemed, a successor to the Debtors or their Estates, and the Liquidating Trust shall not be responsible for any liabilities or obligations of the Debtors other than obligations and Distributions contemplated under the Plan.

### 6.6    Purpose of the Liquidating Trust

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, prosecuting any Causes of Action transferred to the Liquidating Trust to maximize recoveries for the benefit of the Liquidating Trust Beneficiaries, and making Distributions in accordance with the Plan to the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The

78314463.6

Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the trust.

### 6.7    The Liquidating Trustee

(a)    <u>Retention of Liquidating Trustee</u>. The Liquidating Trustee shall carry out the duties as set forth in this section and in the Liquidating Trust Agreement. Pursuant to Bankruptcy Code section 1123(b)(3), the Liquidating Trustee shall be deemed the appointed representative to, and may pursue, litigate, and compromise and settle any such rights, claims, and Causes of Action in accordance with the best interests of and for the benefit of the Liquidating Trust Beneficiaries. In the event that the Liquidating Trustee resigns, is removed, terminated, or otherwise unable to serve as the Liquidating Trustee, then a successor shall be appointed as set forth in the Liquidating Trust Agreement. Any successor Liquidating Trustee appointed shall be bound by and comply with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

(b)    <u>Responsibilities and Authority of Liquidating Trustee</u>. The responsibilities and authority of the Liquidating Trustee shall include: (a) establishing  reserves and investing Cash; (b) liquidating non-Cash assets of the Liquidating Trust; (c) retaining and paying professionals as necessary to carry out the purposes of the Liquidating Trust; (d) preparing and filing tax returns for the Liquidating Trust; (e) preparing and filing reports and other documents necessary to conclude and close the Chapter 11 Cases; (f) objecting to, reconciling, seeking to subordinate, compromising or settling any or all Claims and administering Distributions on account of General Unsecured Claims; (g) evaluating, filing, litigating, settling, or otherwise pursuing any Estate Causes of Action; (h) abandoning any property of the Liquidating Trust that cannot be sold or distributed economically; (i) making interim and final distributions of Liquidating Trust Assets; (j) winding up the affairs of the Liquidating Trust and dissolving it under applicable law; (k) destroying records; and (l) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

(c)    <u>Powers of the Liquidating Trustee</u>. The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to approval by the Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of the Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan. The Liquidating Trustee shall have the power and authority without further approval by the Court to liquidate the Liquidating Trust Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to prosecute and settle any Estate Causes of Action, and otherwise take any action as shall be necessary to administer the Chapter 11 Cases and effect the closing of the Chapter 11 Cases, including, without limitation, as

9

follows: (a) the power to invest funds, in accordance with Bankruptcy Code section 345, and withdraw, make Distributions and pay taxes and other obligations owed by the Liquidating Trust from funds held by the Liquidating Trustee in accordance with the Plan and Liquidating Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to his or her responsibilities; (c) the power to pursue, prosecute, resolve, and compromise and settle any Estate Causes of Action on behalf of the Liquidating Trust without prior Bankruptcy Court approval but in accordance with the Liquidating Trust Agreement; (d) the power to object to Claims, including, without limitation, the power to subordinate and recharacterize Claims by objection, motion, or adversary proceeding; and (e) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan. Except as expressly set forth in the Plan and in the Liquidating Trust Agreement, the Liquidating Trustee, on behalf of the Liquidating Trust, shall have absolute discretion to pursue or not to pursue any Causes of Action determined to be in the best interests of the Liquidating Trust Beneficiaries and consistent with the purposes of the Liquidating Trust, and shall have no liability for the outcome of his or her decision, other than those decisions constituting gross negligence or willful misconduct. The Liquidating Trustee may incur any reasonable and necessary expenses in liquidating and converting the Liquidating Trust Assets to Cash. Subject to the other terms and provisions of the Plan, the Liquidating Trustee shall be granted standing, authority, power, and right to assert, prosecute, and/or settle the Estate Causes of Action and/or make a claim under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies based upon its powers as a Court-appointed representative of the Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials.

(d)     <u>Enforcement of Estate Causes of Action</u>. Pursuant to Bankruptcy Code section 1123(b), the Liquidating Trustee, on behalf of and for the benefit of the Liquidating Trust Beneficiaries, shall be vested with and shall retain and may enforce Estate Causes of Action transferred to the Liquidating Trust that were held by, through, or on behalf of, the Debtors and/or the Estates against any other Person, arising before the Effective Date that have not been fully resolved or disposed of prior to the Effective Date, whether or not such Estate Causes of Action are specifically identified in the Plan and whether or not litigation with respect to same has been commenced prior to the Effective Date.  The recoveries from any Estate Causes of Action transferred to the Liquidating Trust will be deposited into the Liquidating Trust and distributed in accordance with the Liquidating Trust Agreement and the Plan.

(e)     <u>Compensation of Liquidating Trustee</u>. The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement; provided, however, that such compensation shall only be payable from the Liquidating Trust Cash. The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in the Plan, the Confirmation Order and the Liquidating Trust Agreement. The Liquidating Trustee shall not be required to file a fee application to receive compensation.

(f)     <u>Retention and Payment of Professionals</u>. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his or her duties and compensate such professionals from the Liquidating Trust Cash as set forth in the Liquidating Trust Agreement.

78314463.6

(g)     <u>Limitation of Liability of the Liquidating Trustee</u>. The Liquidating Trust shall indemnify the Liquidating Trustee and his or her professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or his or her professionals may incur or sustain by reason of being or having been a Liquidating Trustee or professionals of the Liquidating Trustee for performing any functions incidental to such service; provided, however, the foregoing shall not relieve the Liquidating Trustee or his or her professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing.

**6.8     Liquidating Trust Expenses**

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Liquidating Trust Expenses. All Liquidating Trust Expenses shall be charged against and paid from the Liquidating Trust Cash.

**6.9     Resignation/Removal of the Liquidating Trustee**

The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court. Any such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing date of such notice; and (ii) the appointment of a successor Liquidating Trustee in accordance with the Liquidating Trust Agreement.

**6.10     Appointment of Successor Liquidating Trustee**

In the event of the death or resignation of the Liquidating Trustee, the U.S. Trustee shall designate a successor Liquidating Trustee in accordance with the terms of the Liquidating Trust Agreement. Any successor Liquidating Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.

**6.11     Dissolution of the Committee**

On the Effective Date, the Committee shall be deemed dissolved, the retention and employment of the Committee's Professionals shall be deemed terminated, and the members of the Committee shall be deemed released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final fee applications in connection with Professional Compensation Claims filed in the Chapter 11 Cases.

**6.12     Transfer of Assets**

The following actions shall occur on or before the Effective Date and shall be effective on the Effective Date:

(a)     <u>Execution of Documents and Corporate Action</u>. The Plan Proponents shall deliver all documents and perform all actions reasonably contemplated with respect to implementation of

78314463.6

the Plan. The Chapter 11 Trustee is authorized: (i) to execute on behalf of the Debtors, in a representative capacity and not individually, any documents or instruments after the Confirmation Date that may be necessary to consummate the Plan and (ii) to undertake any other action on behalf of the Debtors to consummate the Plan. Each of the matters provided for under the Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtor. On the Effective Date, all corporate actions required by the Debtors, in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors. For purposes of effectuating the Plan, none of the transactions contemplated in the Plan shall constitute a change of control under any agreement, contract, or document of the Debtors.

(b)  <u>Cancellation of Obligations</u>.  As of the Effective Date, all Documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged as set forth herein; provided, however, consistent with Article 11.1 of the Plan, nothing in the Plan shall be deemed to grant the Debtors a discharge.

(c)  <u>Funding of the Distribution Fund and the Liquidating Trust Cash</u>.  On or before the Effective Date (but effective on the Effective Date), the Chapter 11 Trustee, on behalf of the Debtors, shall transfer to the Distribution Fund Cash sufficient to fund all actual amounts necessary and as required to fund the Distribution Fund, which shall be separately accounted for and maintained by the Liquidating Trustee. On or before the Effective Date (but effective on the Effective Date), the Chapter 11 Trustee, on behalf of the Debtors, shall transfer to the Liquidating Trust all remaining Cash not otherwise transferred to the Distribution Fund for the purposes of funding the Liquidating Trust Cash, which amounts shall be collectively accounted for and maintained by the Liquidating Trustee.

(d)  <u>Execution and Ratification of the Liquidating Trust Agreement</u>. On or before the Effective Date (but effective on the Effective Date), the Liquidating Trust Agreement shall be executed by the Liquidating Trustee. The Liquidating Trust Agreement is attached as Exhibit B to the Plan.  Each holder of a Claim or Equity Interest shall be deemed to have ratified and become bound by the terms and conditions of the Liquidating Trust Agreement.

(e)  <u>Transfer of Liquidating Trust Assets</u>. All assets constituting the Liquidating Trust Assets (which, for the avoidance of doubt, include the Distribution Fund, the Liquidating Trust Cash, and the Causes of Action) shall be conveyed and transferred by the Chapter 11 Trustee on behalf of the Debtors, and shall vest to the Liquidating Trust, free and clear of all Liens, Claims, interests, and encumbrances.

**6.13    Tax Treatment of the Liquidating Trust**

The Liquidating Trust established under the Plan is established for the purpose of Distributions to Beneficiaries by liquidating the Liquidating Trust Assets transferred to the Liquidating Trust and performing related and incidental functions referenced in the Liquidating Trust Agreement, and the Liquidating Trust shall have no objective of continuing or engaging in

78314463.6

any trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the trust. The purpose of the Liquidating Trust is to distribute the Liquidating Trust Assets and the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Liquidating Trust, to the Beneficiaries in accordance with the terms of the Plan. No business activities will be conducted by the Liquidating Trust other than those associated with or related to the liquidation of the Liquidating Trust Assets. It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of the Treasury Regulations Section 301.7701-4(d). All parties and Beneficiaries shall treat the transfers in trust described herein as transfers to the Beneficiaries for all purposes of the Internal Revenue Code of 1986, as amended (including Sections 61(a)(12), 483, 1001, 1012, and 1274 thereof). All the parties and Beneficiaries shall treat the transfers in trust as if all the transferred assets, including all the Liquidating Trust Assets, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Liquidating Trust. The Beneficiaries shall be treated for all purposes of the Internal Revenue Code of 1986, as amended, as the grantors of the Liquidating Trust and the owners of the Liquidating Trust. The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) or (b). All parties, including the Beneficiaries and the Liquidating Trustee, shall value the Liquidating Trust Assets consistently, and such valuations shall be used for all federal income tax purposes. Beneficiaries may wish to consult with a tax professional regarding the tax consequences of holding a Beneficial Interest in or receiving a Distribution from the Liquidating Trust.

### 6.14    Preservation of Causes of Action

Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action (including any Right of Action or D&O Claim), or other claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular claim, Cause of Action, Right of Action, D&O Claim or other claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such claim, Cause of Action, Right of Action, D&O Claim or other claim for relief.

In keeping with section 1123(b)(3) of the Bankruptcy Code and except as otherwise exculpated, released, compromised, or settled in the Plan, the Debtors, the Chapter 11 Trustee, the Liquidating Trust and the Liquidating Trustee, as the case may be, reserve and retain (and transfer to the Liquidating Trust) any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, and/or any Distribution date, including, without limitation, any and all Causes of Action (including any Rights of Action and D&O Claims), and/or other claims for relief that the Debtors, the Liquidating Trustee or Liquidating Trust may have against (i) any insurer and/or insurance policies (including, without limitation, the D&O Policies) in which either the Debtors and/or their current or former personnel have an insurable or other interest in or right to make a claim against any other of the Debtors' insurers; or (ii) any recipient of a transfer identified in the Debtors' statements of financial affairs, including any amendments thereto, filed in these Chapter 11 Cases, which transfers may be recoverable under Chapter 5 of the Bankruptcy Code, including all claims assertable under sections 544, 546, 547, 548 and 550 of the Bankruptcy Code. The Debtors, the Liquidating Trust, and the Liquidating Trustee, as the case may be, further reserve

and retain (and transfer to the Liquidating Trust) any and all claims owned by the Debtors pursuant to section 541 of the Bankruptcy Code or similar state law, including all claims against third parties on account of any indebtedness, and including, without limitation, the Causes of Action (including any Rights of Action or D&O Claims) and all other claims owed to or in favor of the Debtors to the extent not specifically compromised and released pursuant to the Plan or an agreement referred to or incorporated herein.

For the avoidance of doubt, the Liquidating Trustee shall retain and shall have the sole and exclusive right to prosecute, enforce and/or settle any and all of the claims, rights, Causes of Action (including any Rights of Action and D&O Claims).

The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtors, Chapter 11 Trustee, the Liquidating Trust or the Liquidating Trustee relating to any claims and Causes of Action (including any Rights of Action and D&O Claims) referred to in this Subsection or otherwise. Except as specifically set forth herein, the Liquidating Trustee shall constitute the representative of the Estates for purposes of retaining, asserting and/or enforcing the claims, Causes of Action under § 1123(b)(3)(B) of the Bankruptcy Code. On the Effective Date, the Liquidating Trustee shall be substituted as a party of record in all pending litigation brought by or against the Chapter 11 Trustee, the Committee, or the Debtors without need for further order of the Bankruptcy Court.

### 6.15    Insurance Policies and Preservation

Nothing in this Plan, the Confirmation Order, or the Liquidating Trust Agreement shall alter or have any effect whatsoever on the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or shall otherwise modify the coverage or benefits provided thereunder or the terms and conditions thereof, or shall otherwise diminish or impair the enforceability of the Insurance Policies, which shall continue in full force and effect for all purposes (except that such Insurance Policies shall be assumed by the Debtors pursuant to section 365 of the Bankruptcy Code) unless otherwise ordered by a separate order of the Court. Further, nothing in this Plan, including any releases, waiver of any objection to the Plan, or vote in favor of the Plan shall diminish or impair the enforceability of any Insurance Policy that may cover claims against the Debtors, the Estates, or any other Person. All of the Debtors' rights and their Estates' rights under any Insurance Policy shall vest with the Liquidating Trust for the benefit of the Beneficiaries of the Liquidating Trust and all of the beneficiaries of such policies.

### ARTICLE VII
### PROVISIONS GOVERNING RESOLUTION OF CLAIMS
### AND DISTRIBUTIONS OF PROPERTY UNDER THE PLAN

### 7.1    Right to Object to Claims

Notwithstanding anything to the contrary herein, subject to the terms and conditions set forth in the Liquidating Trust Agreement, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under the Plan on and after the Effective Date, following the Effective Date, the Liquidating Trustee shall have

78314463.6

the sole and exclusive authority, but not the obligation, to: (1) file, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court. The Liquidating Trustee shall succeed to any pending objections to Claims filed by the Debtors, the Chapter 11 Trustee, or the Committee prior to the Effective Date and shall be deemed to be substituted into any pending adversary proceedings involving the Debtors, the Chapter 11 Trustee, or the Committee, and shall have and retain any and all rights and defenses the Debtors, the Chapter 11 Trustee, and the Committee had immediately prior to the Effective Date with respect to any Disputed Claim. The Liquidating Trustee shall succeed to all of the Debtors', the Chapter 11 Trustee's, and the Committee's attorney-client, work-product, and other privileges.

### 7.2    Deadline for Objecting to Claims

Except as otherwise provided herein, objections to Claims must be filed with the Bankruptcy Court, and a copy of the objection must be served on the subject Creditor before the expiration of the Claim Objection Deadline (unless such period is further extended by subsequent orders of the Bankruptcy Court); otherwise such Claims shall be deemed Allowed in accordance with Bankruptcy Code section 502. The objection shall notify the Creditor of the deadline for responding to such objection.

### 7.3    Right to Request Estimation of Claims

Pursuant to Bankruptcy Code section 502(c), the Chapter 11 Trustee, or following the Effective Date, only the Liquidating Trustee, may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

### 7.4    Disallowance of Late Filed Proofs of Claim

Except as otherwise provided in the Plan or in a Final Order, any Proof of Claim filed by the holder of such Claim after the General Bar Date or the Governmental Unit Bar Date, as applicable, is hereby disallowed without the need for any further action.

### 7.5    Distribution Procedures Regarding Allowed Claims

(a)    <u>In General</u>.  After the Effective Date, except as otherwise provided herein, the Liquidating Trustee shall make all Distributions required to be made under the Plan. The Chapter 11 Trustee or the Liquidating Trustee, as applicable, shall make Distributions on account of Allowed Professional Compensation Claims from the Debtor's Estates or the Distribution Fund.

(b)    <u>Distributions on Allowed Claims Only</u>.  Distributions shall be made only to the holders of Allowed Administrative Claims, Statutory Fees, Allowed Professional Compensation Claims, Allowed Non-Priority Wage Claims, Allowed Class 4 Claims, and to the extent there are Remaining Funds, Allowed Class 5 Claims. Unless and until a Disputed Claim becomes an Allowed Claim, the Holder of that Disputed Claim shall not receive a Distribution. For the

avoidance of doubt, reserves for Disputed Claims shall be separately maintained and accounted for in the Distribution Fund to ensure appropriate recoveries to each particular class of Claims.

(c)    Place and Manner of Payments of Distributions. Except as otherwise specified in the Plan, Distributions shall be made by wire, check, or such other method as the Liquidating Trustee deem appropriate under the circumstances. If by check, such Distribution will be mailed to the  Allowed Claim Holder at the address listed in any proof of claim filed by the Creditor or at such other address as such Creditor shall have specified for payment purposes in a written notice received by the Liquidating Trustee at least twenty (20) days before a Distribution Date. If a Creditor has not filed a proof of claim or sent the Liquidating Trustee a written notice of payment address, then the Distribution(s) for such Creditor will be mailed to the address identified in the Schedules of Assets and Liabilities. Before receiving any Distributions, all Allowed Claim Holders, at the request of the Liquidating Trustee, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Liquidating Trustee; otherwise, the Liquidating Trustee may suspend Distributions to any Allowed Claim Holder who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

(d)    Undeliverable Distributions. If a Distribution made to any Allowed Claim Holder is returned as undeliverable, the Liquidating Trustee shall use reasonable efforts to determine the then current address for such Allowed Claim Holder.  If the Liquidating Trustee cannot determine, or is not notified of, a then current address for such Allowed Claim Holder within six months after the Effective Date, the Distribution reserved for such Allowed Claim Holder shall be deemed an unclaimed Distribution, and Section 7.6(e) herein shall be applicable thereto.

(e)    Unclaimed Distributions.  If the current address for a Allowed Claim Holder entitled to a Distribution under the Plan has not been determined within six (6) months after the Effective Date or such Allowed Claim Holder has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to the Liquidating Trustee, then such Creditor shall forfeit the Distribution on the Allowed Claim.

(f)    Withholding. The Liquidating Trustee may, but shall not be required to, at any time withhold from a Distribution to any Person (except the Internal Revenue Service) amounts sufficient to pay any tax or other charge that has been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any Distribution provided for in the Plan, whenever such withholding is determined by the Liquidating Trustee (in its sole discretion) to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Liquidating Trustee, in the exercise of its sole discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts that may be withheld in accordance with the provisions of this section.

(g)    Dissolution.

(i)    The Liquidating Trustee and the Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as all of the Liquidating Trust Assets have been distributed pursuant to the Plan and the Liquidating Trust

16

78314463.6

Agreement; provided, however, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the creation of the Liquidating Trust unless the Bankruptcy Court, upon motion by the Liquidating Trustee prior to the expiration of the five (5) year term, extends such period.

(ii)     If at any time the Liquidating Trustee determines, in reliance upon such professionals as a Liquidating Trustee may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Liquidating Trustee may (i) reserve any amount necessary to dissolve the Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from United States federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation," as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtors, the Liquidating Trust, and any insider of the Liquidating Trustee, and (iii) dissolve the Liquidating Trust.

## 7.6     Distribution Procedures Regarding Disputed Claims and Equity Interests

At such time as a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall distribute to the Holder of such Claim, such Holder's Pro Rata Share of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

## ARTICLE VIII
## EXECUTORY CONTRACTS

## 8.1     Rejection of Executory Contracts and Unexpired Leases

All Executory Contracts and Unexpired Leases of the Debtors (not previously rejected or assumed and assigned by the Debtors) shall be deemed rejected on the Effective Date.

## 8.2     Rejection Claim Bar Date

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in a Rejection Claim in favor of a counterparty to such executory contract or unexpired lease, such Rejection Claim, if not heretofore evidenced by a timely and properly filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or the Liquidating Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Liquidating Trustee and the Liquidating Trustee on or before the Rejection Claim Bar Date. All Allowed Rejection Claims shall be treated as General Unsecured Claims pursuant to the terms of the Plan.

17

To the extent that any and all of the Debtors' insurance policies, including any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, are considered executory contracts, then notwithstanding anything contained in the Plan to the contrary, such insurance policies, shall be deemed assumed and assigned to the Liquidating Trust. Unless otherwise determined by the Bankruptcy Court, pursuant to a Final Order, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such policy. For the avoidance of any doubt, all rights under any insurance policy that is not an executory contract, and all rights under any other insurance policies and under which the Debtors may be beneficiaries, shall be preserved and shall vest with the Liquidating Trustee and shall remain in full force and effect after the Effective Date for the term thereof; and nothing herein shall alter or adversely affect the rights of any non-Debtor beneficiaries of or covered Entity under such insurance policies. Further, for the avoidance of any doubt, the Liquidating Trustee may bring or assert Causes of Action under any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies, as insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials, as those terms are used in the policies.

### 8.3    Indemnification Obligations

Except as provided by the D&O Policies, any obligation of the Debtors to indemnify, reimburse, or limit the liability of any Person, including any officer or director of the Debtors, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtors, relating to any acts or omissions occurring before the Effective Date, whether arising pursuant to charter, bylaws, contract or applicable state law, shall be deemed to be and (a) shall be treated as (solely to the extent timely filed) as a General Unsecured Claim and/or Executory Contract and shall be deemed to be rejected, canceled, and discharged pursuant to the Plan as of the Effective Date and (b) any and all Claims resulting from such obligations are disallowed under Bankruptcy Code section 502(e) or other applicable grounds, including Bankruptcy Code section 502(d) or violations of Bankruptcy Code sections 327, 362, 363 or other requirements of the Bankruptcy Code without the need to file any formal objections, or if any court of applicable jurisdiction rules to the contrary, such Claim shall be estimated pursuant to Bankruptcy Code section 502(c) in the amount of $0 or such other amount as the Bankruptcy Court shall determine.

## ARTICLE IX
## EFFECT OF REJECTION BY ONE OR MORE CLASSES

### 9.1    Impaired Classes Entitled to Vote

Each Impaired Class shall be entitled to vote separately to accept or reject the Plan. A holder of a Disputed Claim which has not been temporarily allowed for purposes of voting on the Plan may vote only such Disputed Claim in an amount equal to the portion, if any, of such Claim shown as fixed, liquidated, and undisputed in the Debtors' Schedules of Assets and Liabilities. For the avoidance of doubt, a Holder of a Disputed Insider Claim shall not be entitled to vote to accept or reject the Plan on account of such Claim if such Claim remains Disputed as of the Voting Record Date.

78314463.6

### 9.2 Acceptance by Class

A Class of Claims shall have accepted the Plan if the Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

### 9.3 Reservation of Cramdown Rights

In the event that any impaired Class shall fail to accept the Plan in accordance with Bankruptcy Code section 1129(a), the Plan Proponents reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with the provisions of the Bankruptcy Code section 1129(b).

## ARTICLE X
## EFFECT OF CONFIRMATION

### 10.1 Legally Binding Effect

The provisions of the Plan shall bind all Creditors and Equity Interest Holders, whether or not they accept the Plan and wherever located.

### 10.2 Vesting of Property

On the Effective Date, all of the Liquidating Trust Assets (including without limitation the Distribution Fund, the Liquidating Trust Cash, and the Causes of Action) shall be transferred to and vest in the Liquidating Trust.  All transfers to the Liquidating Trust shall be free and clear of all Liens, claims, interests and encumbrances. Except as specifically set forth herein, only Liquidating Trust Beneficiaries shall recover from the Liquidating Trust for the satisfaction of their Allowed Claims. For federal income tax purposes, the transfer of the identified assets to the Liquidating Trust will be deemed to be a transfer to the Holders of Allowed Class 4 or Class 5 Claims (who are the Liquidating Trust Beneficiaries), followed by a deemed transfer by such beneficiaries to the Liquidating Trust.

## ARTICLE XI
## INJUNCTIONS, RELEASES, AND DISCHARGE

### 11.1 No Discharge of the Debtors

The Debtors shall not receive a discharge under the Plan.

### 11.2 Injunction

All injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the later of (a) the Effective Date, or (b) the date indicated in the order providing for such injunction or stay. Notwithstanding the foregoing, nothing herein shall be otherwise deemed to modify, limit, amend, or supersede any injunctions or stays granted in the Sale Order.

78314463.6

Except as otherwise provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, all entities who have held, hold, or may hold Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions against any property that is to be distributed under the terms of the Plan on account of any such Claims or Equity Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any lien or encumbrance; (d) asserting a setoff, right, or subrogation of any kind against any debt, liability, or obligation due to the Debtors; and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided, however*, that such entities shall not be precluded from exercising their rights pursuant to and consistent with the terms of the Plan or the Confirmation Order; *provided, further*, that the foregoing provisions shall not apply to any acts, omissions, claims, causes of action, or other obligations expressly set forth in and preserved by this Plan or any defenses thereto. Notwithstanding the foregoing, nothing herein shall be otherwise deemed to modify, limit, amend, or supersede any injunctions or stays granted in the Sale Order.

### 11.3    Exculpation and Limitation of Liability

None of (a) the Chapter 11 Trustee or any of his attorneys, financial advisors, or any other professional persons employed by the Chapter 11 Trustee; or (b) the Committee and each of its members or any of their employees, officers, directors, agents, representatives, attorneys, financial advisors, or any other professional Persons employed by any of them (the Persons identified in (a) and (b) are collectively referred to as "Estate Exculpated Parties"), shall have or incur any liability to any Person under any theory of liability for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases, the Disclosure Statement, the Plan, the pursuit of Confirmation, the consummation of the Plan, the administration of the Plan, the property to be liquidated and/or distributed under the Plan or any prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the liquidation of the Debtors, except for their willful or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under this Plan.

### ARTICLE XII
### RETENTION OF JURISDICTION

### 12.1    Bankruptcy Court Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

(a)        To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Right of Action, Claim or Equity Interest, including,

20

without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

(b)      To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(c)      To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract;

(d)      To consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)      To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any Plan Documents or any entity's obligations in connection with the Plan or any Plan Documents, or to defend any of the rights, benefits, Estate Property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)      To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, or the Liquidating Trustee;

(g)      To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors, the Debtors or the Estate that may be pending on the Effective Date or that may be brought by the Debtors, or the Liquidating Trustee (as applicable), or any other related proceedings, and to enter and enforce any default judgment on any of the foregoing;

(h)      To decide or resolve any and all applications filed for compensation;

(i)      To issue orders in aid of execution and implementation of the Plan or any Plan Documents to the extent authorized by Bankruptcy Code section 1142 or provided by the terms of the Plan;

(j)      To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or consummation of the Plan or any Plan Documents;

(k)      To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Case; and

(l)      To enter an order closing these Chapter 11 Cases when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

78314463.6

## 12.2   Limitation on Jurisdiction

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well as the applicable circumstances that continue jurisdiction for defense and enforcement of the Plan and Plan Documents. For the avoidance of doubt, however, such jurisdiction shall be deemed, by the entry of the Confirmation Order, to:

(m)   Permit entry of a final judgment by the Bankruptcy Court in any core proceeding referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with 28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, (i) all proceedings concerning disputes with, or Rights of Action or Claims against, any Person that the Debtors, the Estate, the Liquidating Trust or the Debtors or any of their successors or assigns, may have, and (ii) any and all Rights of Action or other Claims against any Person for harm to or with respect to (x) any Estate Property, including any infringement of intellectual property or conversion of Estate Property, or (y) any Estate Property liened or transferred by the Debtors to any other Person;

(n)   Include jurisdiction over the recovery of any Estate Property (or property transferred by the Debtors with Bankruptcy Court approval) from any Person wrongly asserting ownership, possession or control of the same, whether pursuant to Bankruptcy Code sections 542, 543, 549, 550 or otherwise, as well as to punish any violation of the automatic stay under Bankruptcy Code section 362 or any other legal rights of the Debtors or the Estate under or related to the Bankruptcy Code; and

(o)   Permit the taking of any default judgment against any Entity that has submitted to the jurisdiction of the Bankruptcy Court.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### 13.1   Conditions to Effectiveness

The Plan will not be effective unless (a) the conditions to confirmation above have been either satisfied, or waived, by the Plan Proponents, (b) the Confirmation Order has been entered by the Bankruptcy Court, and no stay or injunction is in effect with respect thereto, (c) no breach or failure to comply with the terms of the Confirmation Order or any other material Order of the Court shall have occurred and be continuing, and (d) the Liquidating Trust has been fully funded as provided in the Plan.

### 13.2   Exemption from Taxes

The Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with the Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; or (d) the making or delivery of any deed or other instrument of transfer under the Plan in connection with the vesting of the Estates' assets in the Liquidating Trust pursuant to or in connection with the Plan, including,

22

without limitation, merger agreements, stock purchase agreement, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property. Pursuant to Bankruptcy Code section 1146 and the Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

### 13.3   Securities Exemption

Any rights issued under, pursuant to or in effecting the Plan, including, without limitation, and the offering and issuance thereof by any party, shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation Bankruptcy Code section 1145.

### 13.4   Defects, Omissions and Amendments of the Plan

The Plan Proponents may, with the approval of the Bankruptcy Court, but without notice to holders of Claims and Equity Interests, insofar as it does not materially and adversely affect holders of Claims and Equity Interests, correct any defect, omission, or inconsistency in the Plan in such a manner and to such extent necessary or desirable to expedite the execution of the Plan. The Plan Proponents may propose amendments or alterations to the Plan before the Confirmation Hearing as provided in Bankruptcy Code section 1127 if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims and Equity Interests, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123 and the Plan Proponents have complied with Bankruptcy Code section 1125. The Plan Proponents may propose amendments or alterations to the Plan after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims and Equity Interests, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123, the Plan Proponents have complied with Bankruptcy Code section 1125, and after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code section 1129.

### 13.5   Due Authorization By Holders of Claims and Equity Interests

Each and every holder of a Claim who elects to participate in the Distributions provided for herein warrants that such holder is authorized to accept in consideration of its Claim against the Debtors the Distributions provided for in the Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such holder under the Plan.

### 13.6   Filing of Additional Documentation

Any document as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan or any Plan Document shall also constitute "Plan Documents."

78314463.6

### 13.7    Governing Law

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Tennessee, without giving effect to the principles of conflicts of law thereof.

### 13.8    Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 13.9    Transfer of Claims or Equity Interests

Any transfer of a Claim shall be in accordance with Bankruptcy Rule 3001(e) and the terms of this Section 13.10. Notice of any such transfer shall be forwarded to the Plan Proponents by registered or certified mail, as set forth in Section 13.11 hereof. Both the transferee and transferor shall execute any notice, and the signatures of the parties shall be acknowledged before a notary public. The notice must clearly describe the interest in the Claim to be transferred. No transfer of Equity Interests shall be allowed after the Voting Record Date.

### 13.10    Notices

Any notice required to be given under the Plan or any Plan Document shall be in writing. Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three (3) days following the date the notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Persons on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Persons on the Post-Confirmation Service List as it is adopted by the Bankruptcy Court at the hearing on confirmation of the Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List.

(a)    If to the Chapter 11 Trustee or the Liquidating Trustee, at:

Gary M. Murphey
Resurgence Financial Services, LLC
3330 Cumberland Blvd., Suite 500
Atlanta, GA 30339
murphey@rfslimited.com

And

David Gordon
Polsinelli PC
1201 West Peachtree Street, Suite 1100

24

78314463.6

Atlanta, GA 30309
dgordon@polsinelli.com

(b)     If to the Committee, at:

Gregory C. Logue
Woolf, McClane, Bright, Allen & Carpenter, PLLC
P. O. Box 900
Knoxville, TN 37901
glogue@wmbac.com

And

Jeffrey K. Garfinkle
Buchalter
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612
jgarfinkle@Buchalter.com

(c)     If to the U.S. Trustee, at:

Tiffany Diiorio
Howard H. Baker, Jr. United States Courthouse
800 Market St #211
Knoxville, TN 37902
Tiffany.Diiorio@usdoj.gov

(d)     If to any Creditor or Equity Interest Holder in his capacity as such, at his address
or facsimile number as listed on the Post-Confirmation Service List.

**13.11   U.S. Trustee Fees**

The Chapter 11 Trustee will pay fees owed or otherwise accrued to the U.S. Trustee on or
before the Effective Date of the Plan.  After the Effective Date, the Liquidating Trustee will file
with the court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by
the U.S. Trustee, and the Liquidating Trustee will pay post-Effective Date quarterly fees to the
U.S. Trustee until a final decree is entered or the case is converted or dismissed as provided in 28
U.S.C. § 1930(a)(6).

**13.12   Implementation**

The Chapter 11 Trustee, the Committee, and/or Liquidating Trustee shall be authorized to
perform all reasonable, necessary and authorized acts to consummate the terms and conditions of
the Plan and the Plan Documents, without further order from the Bankruptcy Court.

25

78314463.6

### 13.13  No Admissions

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission by the Debtors, the Chapter 11 Trustee, the Committee, or the Estates with respect to any matter set forth herein, including, without limitation, liability on any Claim or Equity Interest or the propriety of the classification of any Claim or Equity Interest.

**ARTICLE XIV**
**SUBSTANTIAL CONSUMMATION**

### 14.1    Substantial Consummation

The Plan shall be deemed substantially consummated on the Effective Date.

### 14.2    Final Decree

On full consummation and performance of the Plan and Plan Documents, the Liquidating Trustee may request the Bankruptcy Court to enter a final decree closing the Chapter 11 Cases and such other orders that may be necessary and appropriate.

Dated: September 16, 2021

/s/ Gary M. Murphey
Gary M. Murphey
Chapter 11 Trustee of Neopharma, Inc. and Neopharma Tennessee, LLC

Dated: September 16, 2021

/s/ Armando Fagundes
Armando Fagundes
Committee Chairperson
Official Committee of Unsecured Creditors

26

78314463.6

## EXHIBIT A
### Glossary of Defined Terms

"Acquired Assets" means the assets that the Debtors have already or shall in the future sell, convey, assign, transfer, and deliver to Purchaser, and that Purchaser has purchased from each Debtor, in each case, free and clear of all Liens, other than Permitted Encumbrances (as defined in the APA), in accordance with the terms of the Sale Order and APA. Any inconsistencies that arise under this definition shall be interpreted in favor of the definition of Purchased Assets in the APA.

"Acquired Causes of Action" means any cause of action arising under express or implied warranties from suppliers, or other third parties with respect to the Purchased Assets, or related to an Assumed Contact or Lease or counterparty to any Executory Contract or Unexpired Lease assumed by Purchaser. Any inconsistencies that arise under this definition shall be interpreted in favor of the definition of Acquired Causes of Action in the APA.

"Administrative Claim" means any right to payment constituting actual and necessary costs and expenses of preserving the Estates under Bankruptcy Code sections 503(b) and 507(a)(2) including, without limitation: (a) Professional Compensation Claims, (b) any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code, and (c) all Claims arising under Bankruptcy Code section 503(b)(9).

"Administrative Claim Bar Date" means the date that is twenty-one (21) days after the Confirmation Date.

"Allowance Date" means the date that a Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest.

"Allowed" means, (1) with respect to any Claim, a Claim allowable under Bankruptcy Code section 502, (a) for which a proof of claim was filed on or before, as applicable, the General Bar Date, the Governmental Unit Bar Date, the Administrative Claim Bar Date or the Rejection Claim Bar Date, and as to which no objection or other challenge to the allowance thereof has been timely Filed, or if an objection or challenge has been timely Filed, such Claim is allowed by a Final Order; or (b) for which a proof of claim is not filed and that has been listed in the Schedules of Assets and Liabilities and is not listed as disputed, contingent, or unliquidated unless an objection to such Schedules of Assets and Liabilities has been filed; or (c) that is deemed allowed by the terms of the Plan; or (2) with respect to any Equity Interest, such Equity Interest is reflected as outstanding in the stock transfer ledger or similar register or record of the Debtors on the Petition Date. For purposes of determining the amount of an Allowed Claim (other than a Claim specifically Allowed under the Plan), there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Creditor under Bankruptcy Code section 553. Notwithstanding anything to the contrary in the Plan, the Liquidating Trustee may, in his/her discretion, treat a Claim as an Allowed Claim to the extent it is allowed by an Order that is not a Final Order.

"APA" means the Asset Purchase Agreement, dated March 29, 2021, between the Debtors and USAntibiotics, LLC, as may have been subsequently amended or modified consistent with its terms.

"Ballot" means the form of ballot which the Plan Proponents will transmit to Creditors and Equity Interest Holders who are, or may be, entitled to vote on the Plan.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code, as applicable to these Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Tennessee, together with the District Court as to matters as to which the reference is withdrawn under 11 U.S.C. § 157(d).

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"Beneficial Interest" means an interest that entitles the holder thereof to a Distribution in accordance with the Plan and the Liquidating Trust Agreement.

"Beneficiary" is the Holder of an Allowed Claim.

"Business Day" means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"Cash" means Cash, wire transfer, certified check, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issues by banks, and commercial paper of any Person, including interest accrued or earned thereon.

"Causes of Action" means any and all claims, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether arising under contract or tort, U.S. federal or state law or the applicable law of any foreign jurisdiction, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, whether commenced prior or subsequent to the Petition Date and whether asserted or assertable directly or derivatively, of each of the Debtors, including Avoidance Actions, all of which are preserved and retained under the Plan by the Liquidating Trust unless otherwise specifically waived in writing by the Liquidating Trustee. For the avoidance of doubt, the term "Causes of Action" does not include the Acquired Causes of Action. For the further avoidance of doubt, the term "Causes of Action" also includes Rights of Action and D&O Claims, including without limitation any claim or Cause of Action based upon or relating to any breach of duty, neglect, error, misstatement, misleading statement, breach of warranty or authority, omission or act by any of the Debtors' agents, employees, executives, managers, directors, officers, or management committee members in their respective capacities as such, or any matter claimed against such Debtors' agents, employees, executives, managers, directors, officers, or management committee members or arising solely by reason of

2

his or her status as such Debtors' agents, employees, executives, managers, directors, officers, or management committee members.

"Chapter 11 Cases" means *In re Neopharma, Inc.*, Case No. 20-52015(SDR) and *In re Neopharma Tennessee, LLC*, Case No. 20-52016(SDR) in the Bankruptcy Court.

"Chapter 11 Trustee" means Gary M. Murphey in his capacity as the duly-appointed chapter 11 trustee in the Chapter 11 Cases.

"Charter Documents" means the articles of certificate of incorporation and the bylaws of the Debtors, as applicable, and any amendments to the foregoing.

"Claim" has the meaning assigned to such term by Bankruptcy Code section 101(5).

"Claim Objection Deadline" means the first Business Day that is 180 days after the Effective Date, as may be extended by order of the Bankruptcy Court.

"Class" means one of the classes of Claims or Equity Interests defined in Article III of the Plan.

"Clerk" means the Clerk of the Bankruptcy Court.

"Committee" means the Official Committee of Unsecured Creditors of the Debtors appointed on January 14, 2021 by the Office of the United States Trustee for the Eastern District of Tennessee.

"Confirmation Date" means the date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means the Order of the Bankruptcy Court approving and confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

"Creditor" has the meaning assigned to such term by Bankruptcy Code section 101(10).

"D&O Claims" means any and all of causes of action preserved, retained, and not released under this Plan against the Debtors' current and former directors, officers and/or managers, any third-party, and claims against Insiders (as defined in the Bankruptcy Code).

"D&O Policies" means all primary and excess insurance policies that provide coverage for liability related to the actions or omissions of the Debtors' directors and officers, and, if applicable, "tail" or "runoff" coverage for such policies.

3

"Debtors" means Neopharma and Neopharma Tennessee, each a Debtor in the Chapter 11 Cases.

"Disclosure Statement" means the Disclosure Statement for the Plan of Liquidation of Neopharma, Inc. and Neopharma Tennessee, LLC filed by the Plan Proponents with the Bankruptcy Court, as may be further amended and supplemented.

"Disputed" means, with respect to any Claim or Equity Interest as to which a proof of claim or interest has been Filed or deemed Filed under applicable law, as to which an objection has been Filed and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by the Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely Filed, for the purposes of the Plan, a Claim or Equity Interest shall be considered Disputed to the extent that the Claim or Equity Interest has been scheduled in the Schedules of Assets and Liabilities as contingent, disputed or unliquidated or in the amount of $0.

"Disputed Insider Claims" means any Insider Claim that is Disputed, including claim number 15-1 in the official claims register.

"Distribution" means, except as otherwise provided in the Plan, the property required by the Plan to be distributed to the holders of Allowed Claims and Equity Interests.

"Distribution Date" means any date that a Distribution is made under the Plan or the Liquidating Trust Agreement.

"Distribution Fund" means Cash of the Debtors as of the Effective Date to be used to fund Distributions to holders of Allowed Administrative Claims, Allowed Professional Compensation Claims, Statutory Fees, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, and Allowed Non-Priority Wage Claims, including any necessary reserves with respect to any Disputed Claim. The Plan Proponents shall estimate the aggregate amount of Allowed Administrative Claims, Allowed Professional Compensation Claims, Statutory Fees, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Secured Claims, and Allowed Non-Priority Wage Claims and on the Effective Date will transfer to the Distribution Fund Cash equal to such estimated aggregate amount, including any necessary Cash sufficient to cover any known Disputed amount.

"District Court" means the District Court for the Eastern District of Tennessee.

"Effective Date" means the first Business Day after the Confirmation Order becomes a Final Order if all conditions to the Effective Date as set forth in section 13.2 of this Plan have been satisfied or, if waivable, jointly waived by the Plan Proponents.

"Equity Interest" means any interest in the Debtors represented by ownership of common or preferred stock, including, to the extent provided by applicable law, any purchase right, warrant, stock option or other equity or debt security (convertible or otherwise) evidencing or creating any right or obligation to acquire or issue any of the foregoing.

4

"Estates" means the estates created upon the filing of the Chapter 11 Cases pursuant to Bankruptcy Code section 541, together with all rights, claims and interests appertaining thereto.

"Estate Property" means all right, title, and interest in and to any and all property of every kind or nature owned by the Debtors or their Estates as defined by Bankruptcy Code section 541.

"Estate Exculpated Parties" shall have the meaning provided in Article 11.3 of the Plan.

"Executory Contracts" or "Unexpired Leases" means executory contracts and unexpired leases as such terms are used in Bankruptcy Code section 365, including all operating leases, capital leases, and contracts to which the Debtors is a party or beneficiary on the Confirmation Date.

"File or Filed" means a request for relief encompassed within a pleading or other document is Filed when and on such date as such pleading or other document is entered on the docket of the Bankruptcy Court in these Chapter 11 Cases. A proof of claim is filed when and on such date as such proof of claim is entered on the claims register in these Chapter 11 Cases.

"Final Post-Petition Financing Order" means the *Final Order Approving Post-Petition Financing* [Docket No. 210].

"Final Order" means an order or judgment which has not been reversed, stayed, modified, or amended and as to which the time for appeal has expired and no stay has been obtained.

"First Interim Post-Petition Financing Order" means the *Interim Order* [Docket No. 64].

"General Bar Date" means the deadline for all entities, except Governmental Units, for filing proofs of claim established by the Bankruptcy Court as April 21, 2021.

"General Unsecured Claim" means an unsecured Claim other than an Administrative Claim, a Priority Unsecured Non-Tax Claim, a Priority Tax Claim, a subordinated Claim.

"Governmental Unit" means United States; State; Commonwealth; District; Territory; municipality; department, agency, or instrumentality of the United States (but not a U.S. trustee while serving as a trustee in a case under title 11 of the United States Code), a State, a Commonwealth, a District, a Territory, or a municipality; or other domestic government.

"Governmental Unit Bar Date" means the deadline for Governmental Units for filing proofs of claim established by the Bankruptcy Court as June 21, 2021.

"Holder" means the beneficial holder of any Claim or Equity Interest.

"Impaired" means, with respect to any Class, a Class that is impaired within the meaning of Bankruptcy Code sections 1123(a)(4) and 1124.

5

78314463.6

"Insider" has the meaning set forth in Bankruptcy Code section 101(31).

"Insider Claims" means any General Unsecured Claim of an Insider.

"Insurance Policies" means all insurance policies of the Debtors, including any D&O Policy.

"Lien" has the meaning set forth in Bankruptcy Code section 101(37).

"Liquidating Trust" means the trust established under the Plan and the Liquidating Trust Agreement.

"Liquidating Trust Account" means the segregated interest bearing account established by the Liquidating Trust into which shall be deposited the Liquidating Trust Assets.

"Liquidating Trust Agreement" means the trust agreement that establishes the Liquidating Trust and governs the powers, duties, and responsibilities of the Liquidating Trustee. The form of Liquidating Trust Agreement is attached to the Plan as Exhibit B.

"Liquidating Trust Assets" means  (i) Liquidating Trust Cash; (ii) Distribution Fund; (iii) Causes of Action; (iv) any proceeds collected from the Causes of Action by the Liquidating Trustee; and (v) all other Estate Assets that are not Acquired Assets.

"Liquidating Trust Beneficiary" means each Holder of an Allowed Class 4 Claim, whether such Claim is Allowed before or after the Effective Date. To the extent all Allowed Class 4 Claims are paid in full in accordance with the Plan and there are Remaining Funds, Liquidating Trust Beneficiary shall include each Holder of an Allowed Class 5 Claim whether such Claim is Allowed before or after the Effective Date.

"Liquidating Trust Cash" means all of the Debtors' Cash as of the Effective Date, other than the Cash transferred to the Distribution Fund, to be transferred to the Liquidating Trust on or before the Effective Date to fund the Liquidating Trust and pay all Liquidating Trust Expenses.

"Liquidating Trust Expense" means all actual and necessary fees, costs, expenses and obligations incurred or owed by the Liquidating Trustee or his or her agents, employees, attorneys, advisors or other professions in administering this Plan and the Liquidating Trust (including, without limitation, reasonable compensation for services rendered, and reimbursement for actual and necessary expense incurred by the Liquidating Trustee and his or her agents, employees and professionals) arising after the Effective Date through and including the date upon which the Bankruptcy Order enters a final decree closing the Chapter 11 Cases, which shall be solely payable from the Liquidating Trust Cash.

"Liquidating Trustee" means Gary M. Murphey as disclosed in the Plan and appointed by the Plan Proponents. The Liquidating Trustee shall administer the Liquidating Trust with such rights, duties, and obligations as set forth in the Plan and the Liquidating Trust Agreement.

6

78314463.6

"Neopharma" means Neopharma, Inc., a Delaware Corporation.

"Neopharma Tennessee" means Neopharma Tennessee, LLC, a Delaware limited liability company.

"Non-Priority Wage Claim" means any Claim for pre-petition Wages not entitled to priority in payment under Bankruptcy Code section 507(a); provided that Non-Priority Wage Claim shall not include a Claim for Wages of any Insider.

"Ordinary Course Liability" means any liabilities incurred in the ordinary course of the Debtors' business operations that accrue and become due and payable prior to the Closing.

"Other Priority Claim" means any Claim (other than an Administrative Claim or Priority Tax Claim) to the extent entitled to priority in payment under Bankruptcy Code section 507(a).

"Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, and the Released Parties.

"Petition Date" means December 22, 2020, the date on which the Debtors filed their voluntary Chapter 11 petitions commencing the Chapter 11 Cases.

"Plan" means this Plan of Liquidation, as it may be amended, supplemented, or modified.

"Plan Documents" means, collectively, those material documents executed or to be executed in order to consummate the transactions contemplated under the Plan, including the Liquidating Trust Agreement.

"Plan Proponents" means, collectively, the Chapter 11 Trustee and the Committee.

"Post-Confirmation Service List" means Persons that have notified the Liquidating Trustee in writing indicating a desire to receive electronic notice of all pleadings and provide an e-mail address to which such notices shall be sent.

"Post-Petition Financing Orders" means collectively, the First Interim Post-Petition Financing Order, the Second Interim Post-Petition Financing Order, the Third Interim Post-Petition Financing Order, any other interim order relating to post-petition financing, and the Final Post-Petition Financing Order approved by the Bankruptcy Court in these Chapter 11 Cases.

"Priority Tax Claim" means any Claim held by a Governmental Unit entitled to priority in payment under Bankruptcy Code section 507(a)(8).

"Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in the same Class.

7

"Professional" means a professional employed in the Chapter 11 Cases pursuant to Final Order under Bankruptcy Code sections 327, 328, 363, or 1103.

"Professional Compensation Claim" means a Claim for compensation or reimbursement of expenses of a Professional retained in the Chapter 11 Cases and the Chapter 11 Trustee, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b) and 1103; provided that for the purposes of any Claim asserted by any professional not so employed in the Chapter 11 Cases, but asserting any Claim like a Professional, the holder of such Claim shall have to comply with the same bar dates, duties and requirements as the holder of a Professional Compensation Claim as one condition precedent to seeking any standing or treatment as such, with the Debtors and other parties in interest reserving all other challenges and defenses thereto.

"Purchaser" means USAntibiotics, LLC (f/k/a American Antibiotics, LLC).

"Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease.

"Rejection Claim Bar Date" means the date that is thirty (30) days after the Effective Date.

"Remaining Funds" means any Liquidating Trust Assets that remain after payment in full of all Allowed Class 4 Claims pursuant to the Plan and reserving for Disputed Class 4 Claims that may become Allowed until such Claims are withdrawn or disallowed pursuant to a Final Order.

"Rights of Action" means any and all claims, debts, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, of the Debtors or its Estate and including, but not limited to, any D&O Claims, but excluding the Acquired Causes of Action.

"Sale Order" means the *Order (I) Approving Asset Purchase Agreement, (II) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (III) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (IV) Granting Related Relief* [Docket No. 264].

"Schedules of Assets and Liabilities" means the Debtors' Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in accordance with Bankruptcy Code section 521(a)(1), including as amended by the Plan.

"Second Interim Post-Petition Financing Order" means the *Amended Interim Order* [Docket No. 157].

"Subordinated Insider Claim" means any Allowed Insider Claim that is determined to be subordinated to all General Unsecured Claims by Final Order of the Bankruptcy Court, whether

8

under general principles of equitable subordination, section 510(c) of the Bankruptcy Code, or otherwise.

"Third Interim Post-Petition Financing Order" means the *Second Amended Interim Order* [Docket No. 184].

"Treasury Regulations" means the regulations promulgated under the Internal Revenue Code by the Department of the Treasury of the United States.

"Unimpaired" means, with respect to any Class, a Class that is not Impaired.

"U.S. Trustee" means the Office of the United States Trustee for Region 8.

"Voting Record Date" means October [12], 2021.

"Wages" means any wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual whether such individual was an employee or contractor of the Debtors.

9

**EXHIBIT B**
**Liquidating Trust Agreement**

78314463.6

# LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Trust Agreement"), dated as of December [●], 2021, by and among Gary M. Murphey, in his capacity as the duly appointed Chapter 11 Trustee (the "Chapter 11 Trustee") of Neopharma, Inc. and Neopharma Tennessee, LLC (each a "Debtor," and collectively, the "Debtors"), the Official Committee of Unsecured Creditors of the Debtors (the "Committee", together with the Chapter 11 Trustee, the "Plan Proponents"), and Gary M. Murphey, in his capacity as the trustee of the Liquidating Trust (the "Liquidating Trustee"), is executed in connection with the *Joint Plan of Liquidation of Neopharma, Inc. and Neopharma Tennessee LLC* [Docket No. ●] (as amended, modified or supplemented from time to time, the "Plan"). Capitalized terms used in this Trust Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## WITNESSETH

WHEREAS, the Debtors commenced their chapter 11 cases (collectively, the "Cases") by filing petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Tennessee (the "Bankruptcy Court");

WHEREAS, on September 16, 2021, the Plan Proponents filed the: Plan; the *Disclosure Statement for the Joint Plan of Liquidation of Neopharma, Inc. and Neopharma Tennessee LLC* [Docket No. ●] (the "Disclosure Statement"); and the *Motion of Plan Proponents for Entry of an Order (I) Approving the Adequacy of the Disclosures in the Disclosure Statement; (II) Approving Stretto Services as Voting Agent; (III) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan; (IV) Scheduling a Confirmation Hearing; (V) Approving Related Notice Procedures; and (VI) Granting Related Relief* [Docket No. ●] (the "Solicitation Procedures Motion");

WHEREAS, on October [●], 2021, the Bankruptcy Court entered an order approving the Solicitation Procedures Motion [Docket No. ●];

WHEREAS, on December [●], 2021, the Bankruptcy Court held a hearing on confirmation of the Plan;

WHEREAS, on December [●], 2021, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order");

WHEREAS, the Plan provides for the creation of the Liquidating Trust to hold and administer the Liquidating Trust Assets and the proceeds of the foregoing, to distribute the proceeds of such assets in accordance with the terms of the Plan to the Liquidating Trust Beneficiaries, and to take all actions necessary to wind down and close the Estates and the Cases, all in accordance with the terms of this Trust Agreement and the Plan. As set forth in the Plan, Liquidating Trust Assets means the Distribution Fund, the Liquidating Trust Cash, and the Causes of Action, each as defined in the Plan, and the proceeds or right to proceeds of each, owned as of the Effective Date or acquired thereafter pursuant to the terms of this Plan. This Trust Agreement is executed to establish the Liquidating Trust and to facilitate the Plan;

WHEREAS, the Liquidating Trust is established for the sole purpose of distributing the Liquidating Trust Assets to the Liquidating Trust Beneficiaries by liquidating the Liquidating Trust Assets (including via pursuit of litigation for the benefit of the Liquidating Trust Beneficiaries) and performing related and incidental functions, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the purpose of the Liquidating Trust, including the winddown and closure of the Estates and the Cases;

WHEREAS, the Liquidating Trust is intended to qualify as a liquidation trust within the meaning of Treasury Regulation Section 301.7701-4(d) for United States federal income tax purposes;

WHEREAS, the respective powers, authority, responsibilities and duties of the Liquidating Trustee shall be governed by this Trust Agreement, the Plan, the Confirmation Order, other applicable orders issued by the Bankruptcy Court and, with respect to the Liquidating Trustee only, any obligations under Tennessee law;

WHEREAS, this Trust Agreement is intended to supplement, complement and implement the Plan; provided, however, that except as otherwise expressly stated herein, if any of the terms and/or provisions of this Trust Agreement conflict with the terms and/or provisions of the Plan, then the Plan shall govern; and

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Chapter 11 Trustee, the Committee, and the Liquidating Trustee agree as follows:

## ARTICLE 1

## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1    <u>Establishment of the Liquidating Trust</u>.  Gary M. Murphey hereby accepts his appointment as the Liquidating Trustee. Pursuant to the Plan, the Chapter 11 Trustee, the Committee, and the Liquidating Trustee hereby establish the Liquidating Trust on behalf of the Liquidating Trust Beneficiaries. The Liquidating Trustee agrees to accept and hold the Liquidating Trust Assets in trust for the Liquidating Trust Beneficiaries subject to the terms of this Trust Agreement and agrees to assume the role and duties of the Liquidating Trustee as provided in this Agreement.

1.2    <u>Purpose of the Liquidating Trust</u>.  The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets (including via pursuit of litigation for the benefit of the Liquidating Trust Beneficiaries) and taking all actions necessary to wind down and close the Estates and the Cases, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Liquidating Trustee shall, in an expeditious but orderly manner, liquidate (and litigate as necessary) and convert to Cash the Liquidating Trust Assets, make distributions, and not unduly prolong the duration of the Liquidating Trust. The Liquidating Trust shall not be deemed a

2

successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Plan.

1.3     Transfer of Assets and Rights to the Liquidating Trustee.

(a)     Except as provided otherwise in the Plan, as of the Effective Date the Debtors hereby transfer, assign, convey and deliver to the Liquidating Trustee, (i) all of their right, title, and interest in the Liquidating Trust Assets free and clear of any Lien or Claim in such property of any other Person or entity except as otherwise provided in the Plan, (ii) all of their rights with respect to the Liquidating Trust Assets including attorney-client privilege and hereby waive their right and the right of any legal, financial or other advisors to assert such rights as a defense or otherwise, and the Liquidating Trustee on behalf of the Liquidating Trust hereby assumes and agrees that all such Liquidating Trust Assets will be transferred to the Liquidating Trust free and clear of any and all liabilities except to the extent otherwise provided in the Plan.

(b)     After the Effective Date, to the extent applicable, the Debtors, the Chapter 11 Trustee, and the Committee, as the case may be, agree at the reasonable request of the Liquidating Trustee to execute and deliver, or otherwise make available for inspection, any instruments, documents, books, and records (including those maintained in electronic format and original documents as may be needed) of the Debtors.

1.4     Title to Liquidating Trust Assets.

(a)     The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit of the Liquidating Trust Beneficiaries, whether the Claims of the Liquidating Trust Beneficiaries are Allowed on or after the Effective Date of the Plan. In this regard, the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Liquidating Trust Beneficiaries, and then by the Liquidating Trust Beneficiaries to the Liquidating Trust in exchange for beneficiary interests in the Liquidating Trust, which interests shall be distributed by the Liquidating Trustee to the Liquidating Trust Beneficiaries in exchange for their Allowed Claims in accordance with the Plan and as set forth in Article 3 below. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trustee shall succeed to all of the Debtors' right, title and interest in and to the Liquidating Trust Assets and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets or this Liquidating Trust.

(b)     For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to the Liquidating Trust described in this Section 1.4 and in the Plan (and any subsequent transfers of Assets) as a transfer to the Liquidating Trust Beneficiaries followed by a deemed transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the beneficiaries of this Liquidating Trust shall be treated as the grantors and owners hereof.

1.5     Reliance. The Liquidating Trustee may rely upon the Debtors' filed schedules and statements of financial affairs and all other information provided by the Debtors or their

3

representatives to the Chapter 11 Trustee or the Liquidating Trustee concerning Claims against the Debtors.

1.6     Valuation of Liquidating Trust Assets. As reasonably determined from time to time by the Liquidating Trustee in his good faith and reasonable judgment, valuation of the Liquidating Trust Assets transferred to the Liquidating Trust shall be used consistently by the Liquidating Trustee and the Liquidating Trust Beneficiaries for all federal income tax purposes. The Liquidating Trustee, Debtors, and the Liquidating Trust Beneficiaries agree that (i) the value of the Causes of Action on the date of their transfer to the Liquidating Trust shall be zero dollars; and (ii) the transfer of the Causes of Action to the Liquidating Trust shall "close" the transaction for tax purposes as to the Debtors with respect to any subsequent receipt of proceeds by the Liquidating Trust in connection with the Causes of Action or investment earnings thereon.

1.7     Governance of the Liquidating Trust.  The Liquidating Trust shall be governed by the Liquidating Trustee subject to the provisions set forth in this Trust Agreement and Tennessee law. The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Liquidating Trust and not otherwise, except that the Liquidating Trustee may deal with the Liquidating Trust Assets for its own account as provided herein. Subject to the terms and conditions of this Trust Agreement, the Liquidating Trustee may delegate responsibility for discrete issues or decisions to third parties subject to continued oversight by the Liquidating Trustee.

1.8     Appointment of the Liquidating Trustee. Gary M. Murphey is hereby selected by the Chapter 11 Trustee and the Committee, pursuant to the terms of the Plan, as the Liquidating Trustee. Confirmation of the Plan shall constitute the Bankruptcy Court's approval of Gary M. Murphey, as Liquidating Trustee who shall hold such position until his resignation or death.

1.9     Bond. The Liquidating Trustee shall serve without bond.

1.10    Funding of the Liquidating Trust.  The Liquidating Trustee may from time to time make withdrawals from the Liquidating Trust Assets in amounts and at times that the Liquidating Trustee deems necessary or appropriate to fund any and all Liquidating Trust Expenses that the Liquidating Trust incurs subsequent to the Effective Date in accordance with this Trust Agreement and the Plan. The Liquidating Trustee shall be authorized to make expenditures in the ordinary course of business.

## ARTICLE 2

## THE LIQUIDATING TRUSTEE

2.1     Role of the Liquidating Trustee.  In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall, for the benefit of the Liquidating Trust Beneficiaries and subject to the provisions set forth in this Trust Agreement and the Plan: (i) have the power and authority to hold, manage, and distribute the Liquidating Trust Assets; (ii) have the power and authority to hold, manage, and distribute the Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority; and (iii) have the power and responsibility to take all actions necessary to wind down and close the Estates and

4

the Cases, file any required tax returns, dissolve the Debtor entities in his sole discretion to the extent not otherwise deemed to have been dissolved by application of the Plan and Confirmation Order, and file and receive approval of a final report from the Bankruptcy Court, all as may be provided for in additional and further detail below. In all circumstances, the Liquidating Trustee shall act in the best interests of all Liquidating Trust Beneficiaries of the Liquidating Trust and in furtherance of the purpose of the Liquidating Trust.

2.2    Authority of Liquidating Trustee.  In connection with the administration of the Liquidating Trust, subject to and except as otherwise set forth in this Trust Agreement or the Plan, the Liquidating Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Liquidating Trust. Without limiting, but subject to the foregoing, the Liquidating Trustee, as applicable, shall be authorized, unless otherwise provided for in this Trust Agreement and subject to the limitations contained herein and in the Plan, to:

(a)    Perform the duties, exercise the powers, and assert the rights of a trustee under Sections 704 and 1106 of the Bankruptcy Code, including, without limitation, commencing, prosecuting or settling Causes of Action, enforcing contracts, and asserting claims, defenses, offsets and privileges;

(b)    Hold legal title to any and all rights of the Liquidating Trust Beneficiaries in or arising from the Liquidating Trust Assets, including, without limitation, collecting, receiving any and all money and other property belonging to the Liquidating Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein;

(c)    Make Distributions contemplated under the Plan;

(d)    Supervise and administer the reconciliation, resolution, settlement and payment of Claims and the Distributions to the Holders of Allowed Class 4 Claims (and to the extent applicable, Allowed Class 5 Claims) in accordance with the Plan;

(e)    Enter into any agreement on behalf of the Liquidating Trust required by or consistent with the Plan and perform all of the obligations required of the Liquidating Trustee under the Trust Agreement or the Plan;

(f)    Abandon any of the assets of the Liquidating Trust if the Liquidating Trustee concludes that such assets are of no benefit to the Liquidating Trust Beneficiaries;

(g)    Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding and litigate claims on behalf of the Liquidating Trust, including without limitation all state and federal Causes of Action or any other litigation, which constitute an asset of the Liquidating Trust;

(h)    Participate as a party-in-interest in any proceeding before the United States Bankruptcy Court involving the Chapter 11 Cases;

5

(i)      Act in the name of or in the place of the Debtors or Liquidating Trust in any action before the United States Bankruptcy Court or any other judicial or administrative body;

(j)      Protect and enforce the rights to the Liquidating Trust Assets by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(k)      Take actions and exercise remedies against any Person or entity that owes money to the Liquidating Trust, including without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and, declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

(l)      Retain and pay any law firms, professionals, or other third parties (collectively, the "Liquidating Trust Professionals") as the Liquidating Trustee may select to assist the Liquidating Trustee in his duties, on such terms as the Liquidating Trustee deems appropriate, without Bankruptcy Court approval. The Liquidating Trustee may commit the Liquidating Trust to and shall pay Liquidating Trust Professionals reasonable compensation for services rendered and expenses incurred and may engage counsel, as well as commit the Liquidating Trust to indemnify any such parties in connection with the performance of services. A law firm or professional shall not be disqualified from serving as a Liquidating Trust Professional solely because of its current or prior retention as counsel or professional to the parties in interest in the Cases;

(m)      Retain and pay an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Liquidating Trust as the Liquidating Trustee may deem appropriate, and to prepare and file any tax returns or informational returns for the Liquidating Trust as may be required, without Bankruptcy Court approval. The Liquidating Trustee may commit the Liquidating Trust to and shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred;

(n)      Employ such employees as the Liquidating Trustee, and as consistent with the purposes of the Liquidating Trust, may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under this Trust Agreement. The Liquidating Trustee may commit the Liquidating Trust to and shall pay all such employees reasonable salary in the amounts it shall determine to be appropriate and any employee benefits it may establish. If the Liquidating Trustee employs employees, the Liquidating Trustee shall establish payroll procedures and pay any and all federal, state or local tax withholding required under applicable law with respect to any such employees, and it will take all other actions it deems necessary;

(o)      Establish and adopt or cease to provide such employee benefits for the benefit of any employees, in its sole discretion and as consistent with the purposes of the Liquidating Trust, may deem necessary or appropriate;

79869243.2

(p)      Assert or waive any privilege or defense on behalf of the Liquidating Trust, with respect to the Liquidating Trust Assets, or the Debtors as provided in the Trust Agreement or the Plan;

(q)      Compromise, adjust, arbitrate, sue on or defend, pursue, prosecute abandon, exercise rights, powers, and privileges with respect to, or otherwise deal with and settle, in accordance with the terms set forth herein, all Causes of Action in favor of or against the Liquidating Trust as the Liquidating Trustee;

(r)      Avoid and recover transfers of the Debtors' property as may be permitted by the Bankruptcy Code or applicable state law;

(s)      Execute offsets and assert counterclaims against Claims as provided for in the Plan;

(t)      Compromise, settle or otherwise resolve all objections to any Claim filed without approval of the Bankruptcy Court or further notice. Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall file and serve all objections to Claims no later than the Claim Objection Deadline;

(u)      Invest any moneys held as part of the Liquidating Trust in accordance with the terms of Section 2.13 of the Liquidating Trust Agreement, limited, however, to such investments that are consistent with the Liquidating Trust's status as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d);

(v)      Request any appropriate tax determination with respect to the Liquidating Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(w)      May establish and maintain a website for the purpose of providing notice of Liquidating Trust activities in lieu of sending written notice to beneficiaries of Liquidating Trust, subject to providing notice of such website to such Holders;

(x)      Take or refrain from taking any and all actions the Liquidating Trustee reasonably deems necessary or convenient for the continuation, protection and maximization of the Liquidating Trust Assets or to carry out the purposes hereof;

(y)      Seek the examination of any Person or entity, and subject to, the provisions of Bankruptcy Rule 2004;

(z)      Assume such other powers as may be vested in or assumed by the Liquidating Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or the Trust Agreement;

(aa)     Establish and maintain such bank accounts as may be necessary or appropriate, draw checks on such bank accounts and perform such other necessary and appropriate

7

duties with respect to such accounts, or designate individuals as signatories therefore, as the Liquidating Trustee may direct and authorize;

(bb)    Invest or reinvest Liquidating Trust Assets and to cause such investments, or any part thereof, to be registered and held in its name, as Liquidating Trustee, or in the name of nominees;

(cc)    File any required reports and pay to the office of the U.S. Trustee all applicable costs and fees incurred from and after the Effective Date and file a final report with the Bankruptcy Court and close the Cases;

(dd)    Resolve all matters related to the Debtor entities, including their dissolution in his sole discretion to the extent not otherwise deemed to have been dissolved by application of the Plan and Confirmation Order and, in this connection, may use Liquidating Trust Assets for such purposes;

(ee)    Hold any unclaimed Distribution or payment to the Holder of an Allowed Claim in accordance with the Plan and the Liquidating Trust Agreement;

(ff)    Propose any amendment, modification or supplement to the Plan or the Liquidating Trust Agreement;

(gg)    Act as the sole director/officer/manager of each of the Debtors until the Debtors are formally dissolved under applicable law, and, in this connection, may use Liquidating Trust Assets for the purposes of administering such Debtors;

(hh)    At the appropriate time, in his sole discretion to the extent not otherwise deemed to have been dissolved by application of the Plan and Confirmation Order, take such actions and file all documents necessary to effect a dissolution or winding up of the Debtors under applicable law and, in this connection, may use Liquidating Trust Assets for such purposes;

(ii)    File dissolution/termination documents with the appropriate governmental agencies to dissolve the Liquidating Trust;

(jj)    Receive, conserve and manage the Liquidating Trust Assets, and sell, pursuant to 11 U.S.C. § 363(f), 11 U.S.C. § 1 123(a)(5) or the Plan, or otherwise dispose of such assets for a price and upon such terms and conditions as the Liquidating Trustee deems most beneficial to the Liquidating Trust Beneficiaries and execute such deeds, bills of sale, assignments and other instruments in connection therewith;

(kk)    Open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, and, to the extent necessary, the Debtors;

(ll)    Pay all truces, if any, properly payable by the Liquidating Trust and/or the Debtors, make all tax withholdings and file tax returns and tax information returns with respect to the Liquidating Trust and the Debtors, and make tax elections by and on behalf of the Liquidating Trust;

8

(mm)    Pay all lawful expenses, debts, charges and liabilities of the Liquidating Trust or relating to the Liquidating Trust Assets;

(nn)    Enforce all provisions of the Plan or similar agreement;

(oo)    Protect, perfect and defend the title to any of the Liquidating Trust Assets and enforce any bonds, mortgages or other obligations or liens owned by the Liquidating Trust;

(pp)    Carry insurance coverage, including insurance to protect the Liquidating Trust and the Liquidating Trustee against claims brought against the Liquidating Trust or the Liquidating Trustee acting within their capacities with the Liquidating Trust, in such amounts as they deem advisable, including obtain insurance coverage with respect to real and personal property that may become Liquidating Trust Assets, if any;

(qq)    Establish such reserves for taxes, assessments and other expenses of administration of the Liquidating Trust (including without limitation any necessary reserves with respect to any Disputed Claims) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Liquidating Trust;

(rr)    Borrow funds, incur or assume liabilities, and pledge Liquidating Trust Assets on behalf of the Liquidating Trust in furtherance of or in connection with the Liquidating Trustee's or the Liquidating Trust's duties, powers, authority, and obligations under this Trust Agreement, and determine and satisfy any and all liabilities created, incurred or assumed by the Liquidating Trust;

(ss)    Exercise such other powers and duties as are necessary or appropriate in the Liquidating Trustee's discretion to accomplish the purposes of the Plan; and

2.3    <u>Limitation of Liquidating Trustee's Authority</u>.  The Liquidating Trustee shall have no power or authority except as set forth in this Trust Agreement or in the Plan. Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be authorized to engage in any trade or business, and shall only take such actions consistent with the orderly liquidation of the Liquidating Trust Assets as are required or contemplated by applicable law, the Plan and this Trust Agreement, and the actions necessary to wind down and close the Estates and the Cases.

2.4    <u>Books and Records</u>. The Liquidating Trustee shall maintain in respect of the Liquidating Trust books and records relating to the Liquidating Trust Assets (including the Causes of Action) and income of the Liquidating Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Liquidating Trust. Except as otherwise may be expressly provided in this Trust Agreement, nothing in this Trust Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for managing any payment or distribution out of the Liquidating Trust Assets. Subject to all applicable privileges,

the Liquidating Trust Beneficiaries shall have the right, in addition to any other rights they may have pursuant to this Trust Agreement, under the Plan or otherwise, upon twenty (20) days' prior written notice to the Liquidating Trustee, to request a reasonable inspection of the books and records held by the Liquidating Trustee; provided, however, that all costs associated with such inspection shall be paid in advance by such requesting Liquidating Trust Beneficiary; provided further, however, that if so requested, such Liquidating Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee, and make such other arrangements as may be reasonably requested by the Liquidating Trustee. One (1) year after dissolution of the Liquidating Trust or the Debtor entities, the Liquidating Trustee is authorized to destroy any and all books and records without further notice or Bankruptcy Court order, unless the Bankruptcy Court has ordered otherwise; provided, however, that the Liquidating Trustee may move the Bankruptcy Court for entry of an order authorizing the destruction of any and all books and records prior to expiration of the one (1) year period following dissolution of the Liquidating Trust or the Debtor entities.

      2.5      <u>Additional Powers</u>. Except as otherwise set forth in this Trust Agreement or in the Plan, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Liquidating Trustee may control and exercise authority over the Liquidating Trust Assets and over the protection, conservation and disposition thereof. No Person dealing with the Liquidating Trust shall be obligated to inquire into the authority of the Liquidating Trustee in connection with the protection, conservation or disposition of the Liquidating Trust Assets.

      2.6      <u>Tax and Reporting Duties of the Liquidating Trustee</u>. The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section l.671-4(a) and comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, including, without limitation, any requirements imposed with respect to Distributions hereunder and under the Plan. The Liquidating Trustee shall also file (or cause to be filed) any other statements, returns, reports or disclosures relating to the Liquidating Trust that are required by any governmental authority, and all such statements, returns, reports or disclosures shall be prepared in reasonable detail in accordance with all applicable laws.

      2.7      <u>Compliance with Laws</u>. Any and all Distributions of Liquidating Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, without limitation, applicable federal and state securities laws. The Liquidating Trustee may withhold a Distribution from any Liquidating Trust Beneficiary if the Liquidating Trustee is unable, after reasonable investigation, to obtain taxpayer identification information for any Liquidating Trust Beneficiary sufficient to permit the Liquidating Trustee to make any Distribution in compliance with applicable law.

      2.8      <u>Confidentiality</u>. The Liquidating Trustee shall forever hold in strict confidence and not use for personal gain any material, non-public information of or pertaining to the Liquidating Trust Assets, or the operation of the Liquidating Trust and any other entity to which any of the Liquidating Trust Assets may at any time relate.

2.9      Compensation of the Liquidating Trustee.  The Liquidating Trustee shall be entitled to reasonable compensation in accordance with 11 U.S.C. § 326(a). Confirmation of the Plan shall constitute the Bankruptcy Court's approval of the Liquidating Trustee's compensation.

2.10      Costs and Expenses of the Liquidating Trustee.  All costs and expenses of the Liquidating Trustee and Liquidating Trust shall be borne by and as a charge against the Liquidating Trust Assets.

2.11      Compensation Procedures.  Payment of the fees and expenses of the Liquidating Trustee and his professionals shall be paid monthly from the Liquidating Trust Assets and may be made without approval of the Bankruptcy Court.

2.12      Reliance by Liquidating Trustee:

(a)      the Liquidating Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties including, but not limited to, the Claims Register maintained by the Clerk of the Bankruptcy Court or the Plan Proponents' voting agent, Stretto Services, in these Cases; and

(b)      Persons dealing with the Liquidating Trustee shall look only to the Liquidating Trust Assets to satisfy any liability incurred by the Liquidating Trustee to such person in carrying out the terms of this Trust Agreement, and the Liquidating Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidating Trustee are determined by a Final Order to be solely due to the Liquidating Trustee's gross negligence, fraud or willful misconduct; and

(c)      The Liquidating Trustee may consult with and shall not be liable for any actions taken or suffered by the Liquidating Trustee in accordance with the advice of such counsel or other professionals, and may also consult with and rely upon accountants and former consultants or advisors of the Debtors, the Chapter 11 Trustee, the Committee, present and former officers, directors and consultants of the Debtors' affiliates or subsidiaries.

2.13      Investment and Safekeeping of Liquidating Trust Assets.  The right and power of the Liquidating Trustee to invest Liquidating Trust Assets, the proceeds thereof, or any income earned by the Liquidating Trust, shall be limited to the right and power that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

2.14      Authorization to Expend Liquidating Trust Assets.  The Liquidating Trustee may expend the Liquidating Trust Assets: (a) as reasonably necessary to maintain the value of the Liquidating Trust Assets during liquidation: (b) to pay all costs and expenses of the Liquidating Trust (including, without limitation, any taxes imposed on the Liquidating Trust): and (c) to satisfy all other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with this Trust Agreement and the Plan.

11

2.15     <u>Termination</u>.  The duties, responsibilities and powers of the Liquidating Trustee will terminate on the date the Liquidating Trust is dissolved under applicable law in accordance with the Plan, Article 7 of this Trust Agreement, or by an order of the Bankruptcy Court.

2.16     <u>Reliance</u>.  Any Person dealing with the Liquidating Trustee shall be fully protected in relying upon the Liquidating Trustee's certificate or instrument signed by the Liquidating Trustee that it has authority to take any action under this Trust.

2.17     <u>Trustee's Funds</u>.  No provision of this Agreement or the Plan shall require the Liquidating Trustee to expend or risk his own funds or otherwise incur any financial liability in the performance of any of its duties as Liquidating Trustee hereunder or under the Plan, or in the exercise of any of its rights or powers, if the Liquidating Trustee shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to the Liquidating Trustee against such risk or liability is not reasonably assured to the Liquidating Trustee.

## ARTICLE 3

## DISTRIBUTIONS

3.1     <u>Initial Distribution</u>.  On or before the 30th day after the Effective Date, the Liquidating Trustee shall distribute from the Liquidating Trust to each Liquidating Trust Beneficiary in respect of the Allowed Class 4 Claims on a *pro rata* basis and reserving for Disputed Class 4 Claims that may become Allowed until such Disputed Class 4 Claims are withdrawn or disallowed pursuant to a Final Order, not less than seventy five percent of the Liquidating Trust Cash provided, however, that no distribution to an individual unit holder will be required unless such aggregate distribution would be at least $25.00.

3.2     <u>Annual Distribution Withholding</u>.  In the discretion of the Liquidating Trustee but not less frequently than annually, the Liquidating Trustee shall distribute from the Liquidating Trust to each Liquidating Trust Beneficiary, Cash on hand (including, without limitation, all net Cash income plus all net Cash proceeds from the liquidation of Liquidating Trust Assets) from the Liquidating Trust to the Liquidating Trust Beneficiaries, after making reserve for Disputed Claims as provided in Section 3.8 below; provided, however, that no distribution to an individual unit holder will be required unless such aggregate distribution would be at least $25.00.

3.3     <u>Priority of Payment of Distributions</u>.  After payment of the Initial Distribution, the Liquidating Trustee shall apply all Liquidating Trust Assets in the Liquidating Trust:

(a)     FIRST, to pay all Liquidating Trust Expenses incurred by the Liquidating Trustee, including, without limitation, the fees, costs and expenses of all professionals retained by the Liquidating Trustee, in connection with the performance of their duties under the Trust Agreement and the Plan;

12

(b)      SECOND, to the Liquidating Trust Beneficiaries in respect of the Allowed Class 4 Claims until such Claims are paid in full in accordance with this Trust Agreement and the Plan; and

(c)      THIRD, to the Liquidating Trust Beneficiaries in respect of the Allowed Class 5 Claims in accordance with this Trust Agreement and the Plan.

Notwithstanding anything to the contrary contained in this Article 3 or the Plan, prior to making any Distribution to the Liquidating Trust Beneficiaries, the Liquidating Trustee may retain such amounts as deemed reasonably necessary to: (i) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets of the Liquidating Trust during liquidation; and (ii) to pay reasonable estimated expenses. The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other governmental requirement.

3.4      <u>Manner of Payment of Distributions</u>.  All Distributions to Liquidating Trust Beneficiaries from the Liquidating Trust shall be payable only to Liquidating Trust Beneficiaries of Record and, as to each such Liquidating Trust Beneficiary within a Class then entitled to payment, in amounts equal to such Liquidating Trust Beneficiaries' Pro Rata share of the Distribution. All Distributions to Liquidating Trust Beneficiaries from the Liquidating Trust shall be payable in Cash by wire, check, or such other method as it deems appropriate under the circumstances, at the address listed in any proof of claim filed by such Beneficiary or at such other address as such Beneficiary shall have specified for payment purposes in a written notice received by the Liquidating Trustee at least twenty (20) days before a Distribution Date. Before receiving any Distributions, all Liquidating Trust Beneficiaries, at the request of the Liquidating Trustee, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Liquidating Trustee; otherwise, the Liquidating Trustee may suspend Distributions to any Liquidating Trust Beneficiaries who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

3.5      <u>Distributions on Business Days</u>. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

3.6      <u>Objections to Claims; Prosecution of Disputed Claims</u>. The Liquidating Trustee shall have the authority to compromise, settle or otherwise resolve all objections to any Claim filed without approval of the Bankruptcy Court or further notice. Unless otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall file and serve all objections to Claims no later than the Claim Objection Deadline.

3.7      <u>Estimation of Claims</u>. The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors, the Committee, or the Liquidating Trustee previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the

pendency of any appeal relating to any such objection. Subject to the provisions of section 502 of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

      3.8    <u>Reserve for Disputed Claims</u>.

      (a)    No Cash or other property shall be distributed on account of any Disputed Claim or, if less than the entire Claim is a Disputed Claim, the portion of a Claim that is Disputed, unless and until such Claim becomes an Allowed Claim. The Liquidating Trustee shall reserve and segregate Cash sufficient to pay Holders of Disputed Claims their Pro Rata share, if any, of the Liquidating Trust Assets distributed to Liquidating Trust Beneficiaries. Any such Cash reserved shall be held and segregated by the Liquidating Trust for the benefit of holders of Disputed Claims. In the event a Disputed Claim is ultimately Allowed, the holder of such previously Disputed Claim shall, within sixty (60) days, be entitled to payment of such Holder's Pro Rata share of any Distributions previously made.

      (b)    The Liquidating Trustee may make such determinations on Disputed Claims as are appropriate, and as further subject to any Bankruptcy Court authorization as may be requested. The Liquidating Trustee is authorized, as often as desired but at least annually, to make determinations as to the valuation of the Disputed Claims.

      (c)    Upon the Effective Date, any Claims that are the subject of dispute shall be recognized in the Disputed Claims Reserve until Final Order of the Bankruptcy Court or other binding resolution of the status of the Disputed Claim.

      3.9    <u>No Distribution in Excess of Allowed Amounts</u>.  Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, no Liquidating Trust Beneficiary shall receive Distributions of a value which exceed the amount of such Liquidating Trust Beneficiary's Allowed Claim.

      3.10    <u>De Minimis Distributions</u>. Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, the Liquidating Trustee shall not be required to distribute Cash to the holder of an Allowed Claim if the amount of cash to be distributed on account of such Claim is less than $25. Any holder of an Allowed Claim on account of which the amount of Cash to be distributed is less than $25 shall have such Claim discharged and shall be forever barred from asserting any such Claim against the Debtors, the Liquidating Trust, or their respective property. Any Cash not distributed pursuant to this provision shall be the property of the Liquidating Trust, free of any restrictions thereon. The Liquidating Trustee may, in its sole discretion, remit any Cash not distributed or otherwise utilized by the Liquidating Trust pursuant to this Section 3.10 of the

Trust Agreement to the State of Tennessee and/or pay such Cash into the registry of the Bankruptcy Court.

3.11    Setoffs. The Liquidating Trustee may set off against any Distributions to be made to a Liquidating Trust Beneficiary hereunder Causes of Action of any nature that the Liquidating Trustee may at any time hold against such Liquidating Trust Beneficiary; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim under or in accordance with the Plan shall constitute a waiver or release by the Liquidating Trustee of any such claim, right and Causes of Action that the Liquidating Trustee may at any time possess against such Liquidating Trust Beneficiary.

3.12    Disputed Payments. If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any Distribution, the Liquidating Trustee may, in lieu of making such Distribution to such Person, make reserve for such Distribution. Such Distribution shall be held in reserve until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement among the interested parties to such dispute.

3.13    Unclaimed Distributions. If the current address for a Liquidating Trust Beneficiary entitled to a Distribution under the Plan has not been determined within six (6) months after the Effective Date or such Beneficiary has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to the Liquidating Trustee, then such Beneficiary shall forfeit the Distribution on the Claim.

3.14    Uncashed Checks. Checks issued in respect of a Distribution will be null and void if not negotiated within ninety (90) days after the date of issuance. Distributions with respect to such un-negotiated checks shall be treated as an Unclaimed Distribution and will revert to the Liquidating Trust for distribution in accordance with the Plan and Trust Agreement, and payment to such Holder with respect to such un-negotiated check shall be discharged.

3.15    Allocation of Tax Items.

(a)    Unless otherwise required by applicable tax law, items of income, gain, loss and deduction recognized or incurred by the Liquidating Trust and the amount of distributions received by the Liquidating Trust shall be allocated Pro Rata among the Liquidating Trust Beneficiaries who are entitled to receive Distributions in the tax year in accordance with the priorities set forth in Section 3.2 hereof.

(b)    Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidating Trustee shall:

(i)    treat all Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim;

(ii)     on the last day of each calendar year, to the extent there is a reserve for Disputed Claims on that date, treat as taxable income or loss of this separate trust, the portion of the annual taxable income or loss of the Liquidating Trust that would have been allocated to the holders of such Disputed Claims had such claims been Allowed on the Effective Date;

(iii)     treat as a distribution from this separate trust any increased amounts distributed by the Liquidating Trust as a result of any Disputed Claim resolved earlier in the taxable year; and

(iv)     to the extent permitted by applicable law, report consistently for state and local income tax purposes.

## ARTICLE 4

## SUCCESSOR LIQUIDATING TRUSTEE

4.1     <u>Resignation of Liquidating Trustee</u>.  The Liquidating Trustee may resign at any time by filing a written notice of resignation with the Bankruptcy Court. Such resignation shall become effective on the earlier to occur of (i) sixty (60) days after the filing of such notice, or (ii) the appointment of a successor Liquidating Trustee and the acceptance by such successor of such appointment.

4.2     <u>Appointment of Successor Liquidating Trustee upon Resignation</u>.  If the Liquidating Trustee resigns pursuant to Section 4.1, the United States Trustee shall appoint a successor Liquidating Trustee. Any successor Liquidating Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan, and upon such filing, the successor Liquidating Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Liquidating Trustee.

4.3     <u>Acceptance of Appointment by Successor Liquidating Trustee</u>.  Any successor Liquidating Trustee appointed pursuant to this Article 4 shall execute an instrument accepting such appointment as the Liquidating Trustee under this Trust Agreement and shall file and maintain such acceptance with the books and records of the Liquidating Trust. Upon acceptance of such appointment as aforesaid, such successor Liquidating Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Liquidating Trust with like effect as if originally named herein; provided, however, that a removed or resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee under the Liquidating Trust all the estates, properties, rights, powers, and trusts of such predecessor Liquidating Trustee.

## ARTICLE 5

## EXCULPATION AND INDEMNIFICATION

5.1     <u>Exculpation</u>

16

(a)        From and after the Effective Date, the Liquidating Trustee and his professionals, non-professionals, employees, Affiliates, and representatives (the "Protected Parties"), shall be and hereby are exculpated by all Persons and entities, including, without limitation, Holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Trust Agreement, the Plan, or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct or fraud.

(b)        No Holder of a Claim or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Protected Parties, for making payments in accordance with the Plan or this Trust Agreement or for implementing the provisions of the Plan or this Trust Agreement. Any act taken or not taken, in the case of the Liquidating Trustee, with the approval of the Bankruptcy Court, will be conclusively deemed not to constitute gross negligence, willful misconduct, or a breach of fiduciary duty.

5.2        Indemnification. **The Liquidating Trust shall indemnify, defend and hold harmless the Protected Parties from and against any and all claims, causes of action, liabilities, obligations, losses damages or expenses (including attorneys' fees and expenses) occurring after the Effective Date which the Protected Parties may incur or which the Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder or otherwise to the Liquidating Trust or the Liquidating Trustee ("Related Matters"), other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, to the fullest extent permitted by applicable law.**

5.3        In the sole discretion of the Liquidating Trustee, the Liquidating Trustee may authorize available funds of the Liquidating Trust to be advanced to satisfy any reasonable and documented out-of-pocket costs and expenses (including reasonable attorneys' fees and other costs of defense) incurred by any Protected Party who is threatened to be named or made a defendant or a respondent in any proceeding concerning the administration, business, and affairs of the Liquidating Trust: provided, however, that all such payments are subject to disgorgement in the event that the underlying claim against the Protected Party has been finally and judicially determined to have resulted from such Protected Party's own willful misconduct, gross negligence, or fraud.  In the event that, at any time whether before or after termination of this Agreement, as a result of or in connection with Related Matters, any Protected Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or any Protected Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Protected Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the

17

Protected Party shall be reimbursed by the Liquidating Trust for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will be compensated by the Liquidating Trust for the time expended by its personnel based on such personnel's then current hourly rate.

## ARTICLE 6

## REPORTS TO BENEFICIARIES OF LIQUIDATING TRUST

6.1     <u>Securities Laws, Tax and Other Reports to Beneficiaries of Liquidating Trust</u>.

(a)     <u>Tax Reporting</u>.  The Liquidating Trustee shall submit to each Liquidating Trust Beneficiary appearing on its records during such year a separate statement setting forth the holder's share of items of income, gain, loss, deduction or credit. The Liquidating Trust's taxable income, gain, loss, deduction, and credit will be allocated Pro Rata to the holders of Liquidating Trust interests in accordance with such holders' respective beneficial interests in the Liquidating Trust Assets. In addition, the Liquidating Trustee shall file all tax returns required to be filed and shall pay all taxes on such returns. The Liquidating Trustee shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental authority.

(b)     <u>Reporting to the U.S. Trustee</u>.  By thirty days following each calendar quarter commencing from and after the Effective Date, the Liquidating Trustee shall file periodic reports with the office of the United States Trustee and shall promptly pay any and all fees assessed by the United States Trustee; provided, however, that the Liquidating Trustee shall only be required to file such periodic reports and pay such fees to the extent required by the office of the United States Trustee and the Bankruptcy Court, as the case may be.

## ARTICLE 7

## TERMINATION AND FINAL DISTRIBUTION

7.1     <u>Termination of Liquidating Trust</u>.

(a)     The Liquidating Trust will terminate on the earlier of (i) thirty (30) days after the full and final Distribution of the Liquidating Trust Assets or proceeds thereof in accordance with the terms of this Trust Agreement and the Plan, and (ii) the fifth (5th) anniversary of the Effective Date; provided, however, that within six months of the fifth (5th) anniversary of the Effective Date, the Bankruptcy Court, upon a motion by the Liquidating Trustee or any party in interest, may extend the term of the Liquidating Trust for an additional term of not more than five (5) years if it is necessary for the liquidation of the Liquidating Trust Assets. Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained.

(b)     If at any time prior to the events in Section 7.1(a) the Liquidating Trustee determines, in reliance upon such professionals as a Liquidating Trustee may retain, that the expense of administering the Liquidating Trust so as to make a final distribution to Liquidating

Trust beneficiaries is likely to exceed the value of the assets remaining in the Liquidating Trust, the Liquidating Trustee may (i) reserve any amount necessary to terminate the Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from United States federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation," as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtors, the Liquidating Trust, and any insider of the Liquidating Trustee, and (iii) terminate the Liquidating Trust.

(c)     Notwithstanding the foregoing Sections 7.1(a) and 7.1(b), the Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all property and Causes of Action that constitute Liquidating Trust Assets and to effect the full and final Distribution of the Liquidating Trust Assets to the Liquidating Trust Beneficiaries in accordance with the terms hereof and the Plan and, thereafter, terminate the Liquidating Trust as soon as practicable. Notwithstanding anything to the contrary herein, any termination of the Liquidating Trust is conditioned upon payment of all costs and fees payable to the U.S. Trustee and filing and receiving Bankruptcy Court approval of an order to close the Cases.

7.2     <u>Final Distribution</u>.  Prior to and upon termination of the Liquidating Trust, the Liquidating Trust Assets will be finally distributed to the Liquidating Trust Beneficiaries pursuant to the provisions set forth herein.

## ARTICLE 8

## AMENDMENT AND WAIVER

8.1     <u>Amendment And Waiver</u>. This Trust Agreement may not be amended, modified or supplemented, and no provision hereof or rights hereunder may be waived, except with the written consent of the Liquidating Trustee. Any amendments to the Trust Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets.  Notwithstanding anything to the contrary herein, no amendment, modification, supplement or waiver shall be effective if it materially and adversely affects the liquidation and Distributions contemplated by the Plan, or if it would adversely affect the federal income tax status of the Liquidating Trust as a "grantor trust."

## ARTICLE 9

## MISCELLANEOUS PROVISIONS

9.1     <u>Intention of Parties to Establish a Liquidating Trust</u>.  This Trust Agreement is intended to create a liquidating trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed. in all respects as such a trust and any ambiguity herein shall be construed consistent with such intent and purpose and, if necessary, this Trust Agreement may be amended to comply with such federal income tax laws, which amendments may be made to apply retroactively.

19

9.2     Preservation of Privilege and Defenses.  In connection with the vesting and transfer of the Liquidating Trust Assets, including Causes of Action, any attorney-client privilege or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors, the Committee, and the Chapter 11 Trustee shall be transferred to the Liquidating Trust and shall vest in the Liquidating Trust. Accordingly, in connection with the prosecution and/or investigation of the Causes of Action by the Liquidating Trustee, any and all directors, officers, employees, counsel, agents, or attorneys-in-fact, of the Debtors, cannot assert any attorney-client privilege or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtors or otherwise prevent, hinder, delay, or impede production or discussion of documents or communications requested by the Liquidating Trustee in discovery (whether formal or informal, and including without limitation, depositions, written discovery, and interviews). The Debtors, the Chapter 11 Trustee, the Committee, and the Liquidating Trustee shall take all necessary actions to protect the transfer of such privileges, protections and immunities. Notwithstanding anything herein to the contrary, all professionals shall reserve all rights at law regarding work product privilege.

9.3     Prevailing Party.  If the Liquidating Trustee, or the Liquidating Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Trust Agreement or the enforcement thereof, the Liquidating Trustee or the Liquidating Trust, as the case may be, shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

9.4     Confidentiality.  The Liquidating Trustee and his employees, members, agents, professionals and advisors (each a "Confidential Party" and collectively, the "Confidential Parties") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any entity to which any of the Liquidating Trust Assets relates; *provided, however,* that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations.  In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (b), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidating Trustee to allow him/her sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidating Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

9.5     Laws as to Construction.  This Trust Agreement shall be governed and construed in accordance with the laws of the State of Tennessee, without giving effect to rules governing the conflict of laws.

20

9.6     <u>Severability</u>.  If any provision of this Trust Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

9.7     <u>Retention of Jurisdiction</u>.  Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidating Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection with the Liquidating Trust, the Trust Agreement, or any entity's obligations incurred in connection with the Liquidating Trust, and any action against the Liquidating Trustee or any professional retained by the Liquidating Trustee or the Liquidating Trust, in each case in its capacity as such. Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, *forum non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to service by certified or registered mail, return receipt requested, to be sent to its address set forth in this Trust Agreement or in the official Schedules filed in the Cases or to such other address as it may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Trust Agreement.

9.8     <u>Notices</u>.  Any notice or other communication under this Trust Agreement shall be in writing and shall be given by either (i) hand-delivery, (ii) first class mail (postage prepaid), (iii) reliable overnight commercial courier (charges prepaid), or (iv) telecopy or other means of electronic transmission, if confirmed promptly by any of the methods specified in clauses (i), (ii) and (iii) of this sentence, to the following addresses:

If to the Liquidating Trustee:

Gary M. Murphey
Resurgence Financial Services, LLC
3330 Cumberland Blvd., Suite 500
Atlanta, GA 30339
murphey@rfslimited.com

And

David Gordon
Polsinelli PC
1201 West Peachtree Street, Suite 1100

Atlanta, GA 30309
dgordon@polsinelli.com

If to a Liquidating Trust Beneficiary:

To the name and address set forth on the registry maintained by the
Liquidating Trustee and/or the Clerk of the Bankruptcy Court

Notice given by telecopy or other means of electronic transmission shall be deemed to have been given and received when sent. Notice by overnight courier shall be deemed to have been given and received on the date scheduled for delivery. Notice by mail shall be deemed to have been given and received three (3) calendar days after the date first deposited in the United States Mail. Notice by hand delivery shall be deemed to have been given and received upon delivery. A party may change its address by giving written notice to the other party as specified herein.

9.9     Headings.  The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

9.10    Integration.  This Trust Agreement and the Plan constitute the entire agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

9.11    Further Assurances.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of the Liquidating Trust and to consummate the transactions contemplated hereby.

9.12    Successors and Assigns.  The terms of this Trust Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto, and their respective successors and assigns.

9.13    Counterparts.  This Trust Agreement may be signed by the parties hereto in counterparts, which, taken together, shall constitute one and the same document, and the counterparts may be delivered by facsimile transmission or by electronic mail in portable document format (.pdf).

9.14    Relationship to the Plan.  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan. To that end, the Liquidating Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Trust Agreement. If any provisions of this Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

22

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**Neopharma, Inc.**
**Neopharma Tennessee, LLC**

By: /s/_____
  Gary M. Murphey
  In his capacity as Chapter 11 Trustee

**Official Committee of Unsecured Creditors**

By: /s/_____
  Armando Fagundes
  Committee Chairperson

**Liquidating Trustee**

By: /s/_____
Gary M. Murphey
In his capacity as the Liquidating Trustee

79869243.2